IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| NU PAGAMENTOS S.A.,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE DANIEL HUDSON JR.<br><br>Defendant. | Civil Action No.<br>  2:21-cv-00069-RWS<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Nu Pagamentos S.A. ("Nubank"), by its undersigned attorneys, brings this Complaint against Defendant George Daniel Hudson Jr. ("Hudson") for trademark infringement, false designation of origin, unfair competition, cybersquatting and false advertising under the Lanham Act, 15 U.S.C. §1051 *et. seq*. and declaratory judgment under 28 U.S.C. §2201.

## JURISDICTION AND VENUE

1.   The Court has subject matter jurisdiction over Nubank's claims pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331 and 1338(a) because the claims arise under the Lanham Act, 15 U.S.C. §§1114, 1116, 1117, 1125(a), and 1125(d).  In addition,

the Court has subject matter jurisdiction over Nubank's declaratory judgment claim pursuant to 28 U.S.C. §2201.

2.      This Court has personal jurisdiction over Hudson because he is a citizen of the state of Georgia and resides in this judicial district.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because a substantial part of the acts complained of herein occurred in this judicial district and Hudson is subject to personal jurisdiction in this judicial district.

## THE PARTIES

4.      Nubank is a corporation based in Brazil with a principal place of business at Rua Capote Valente 39, São Paulo, Brazil 05409-000.

5.      Upon information and belief, Hudson is an individual residing at 8330 Shadow Creek Drive, Bethlehem, GA 30620.

## FACTUAL BACKGROUND

6.      Nubank is the leading financial technology ("fintech") company in Latin America and the largest independent neobank in the world, with more than 30 million clients.

7.      Its first product, launched in 2014, is an international, no-fee credit card that is fully managed by a mobile app and used by more than 15 million customers. Almost 36 million Brazilians have requested its products.

8. In 2017, Nubank launched its proprietary loyalty rewards program ("Nubank Rewards"), as well as a digital account ("NuConta") that is already used by more than 20 million people.

9. Nubank also has a personal loan product and over the last year has taken its first steps in international expansion, opening offices in Mexico and Colombia.

10. To date, Nubank has raised more than US $900 million in seven equity investment rounds. Nubank's current valuation is estimated at US $25 billion.

11. In 2019, Nubank was elected as the most innovative company in Latin America by Fast Company and in 2018 ranked no. 36 on Fast Company's 50 Most Innovative Companies ranking.

12. Today, Nubank offers consumers various financial and banking options, including digital deposit accounts, international credit cards, personal loans, bill pay services, and life insurance.

13. Nubank's goods and services are provided and used under and by reference to the well-known mark NUBANK®.

14. Nubank is the owner of numerous trademark registrations for the mark NUBANK® around the world including, inter alia, U.S. Trademark Registration No. 6,297,728 (i.e. the " '728 Registration") for the mark NUBANK® in connection with the following services: *Banking services; Online banking; Online banking*

*services by remote access, namely, home banking via Web-based or mobile banking applications; Credit card services, namely, issuance and administration of credit card; Debit card services, namely, issuance and administration of debit card; Financial consultation; Issuance of credit cards; Financial information and advisory services; Electronic funds transfer; Foreign exchange transactions; Saving bank services*. See '728 Registration certificate attached hereto as **Exhibit A**.

15. The '728 Registration entitles Nubank to the exclusive right to use the mark NUBANK® nationwide in connection with the services set forth within the registration.

16. Nubank's trademark appears on goods, labels, packaging, advertising, promotional and collateral materials, as well as on its official website, https://nubank.com.br.

17. Nubank has engaged in substantial marketing of its goods and services, including through online, leaflets, brochures, and other promotional and advertising materials.

18. Overall, Nubank has continually used its trademark in connection with its goods and services that have been advertised and promoted around the world, including the United States. For example, in the United States, there is extensive usage of Nubank-issued credit cards by customers, Nubank's marks and products

have been advertised on the Nasdaq billboard in New York City, and many of Nubank's investors are based in the United States.

19. Through Nubank's extensive promotion efforts, the NUBANK® mark has become associated with Nubank as the source of goods and services offered in connection with the mark.

## HUDSON'S CONDUCT

20. Hudson does not have (and never had) any business relationship with Nubank.

21. Upon information and belief, Hudson has not used the mark NUBANK in providing any goods and/or services in connection with the NUBANK mark. In the event that Hudson has provided any goods and/or services in connection with the NUBANK mark, any rights that Hudson acquired in and to the NUBANK mark have been abandoned. Moreover, in the event that Hudson has used the mark with any goods and/or services, at least three consecutive years have passed since Hudson has used the mark with any goods and/or services in United States commerce.

22. Unlike Nubank, Hudson has never filed an application for registration of the NUBANK mark, and does not otherwise own any registered rights to the NUBANK mark, or any right, title, and/or interest in the NUBANK mark whatsoever.

23. However, since at least as early as 2015, Hudson has actively sought to associate himself with Nubank and sought to benefit from the goodwill and reputation of the NUBANK® mark.

24. For example, Hudson falsely claims that he has a "firm" using the name "Nubank."

25. To further his wrongful conduct, Hudson has (i) published statements, including through LinkedIn, falsely identifying himself as the creator of the NUBANK® mark and brand, (ii) claimed to be a "partner" of Nubank, and (iii) represented himself as "Nubank global." *See* screenshots of Nubank's LinkedIn pages attached hereto as **Exhibit B.**

26. Furthermore, Hudson has used platforms such as LinkedIn to contact customers and business associates of Nubank to discuss banking and fintech matters in an effort to lead the customers and business associates to believe that Hudson is associated with Nubank. For example, in one communication, Hudson alleged that "[s]everal of [his] associates" were doing programming "regarding digital banking, fintech and payments" and attempted to invite individuals to the purported program.

27. Nubank has also identified several instances of Hudson misleading individuals interested in pursuing career opportunities at Nubank. For example, due to Hudson's deceptive online conduct, he received a resume from a Nubank

prospective employee through LinkedIn. Rather than making it clear that he has no association with Nubank, Hudson reviewed her resume and told the prospective employee that he would forward her resume to executives of Nubank.

28. Hudson has also attempted to tarnish the reputation of Nubank by publishing statements online alleging that Nubank stole his company name and falsely asserting that Nubank is financially unstable. He has made false allegations to Nubank customers, employees, business partners, and the media asserting that Nubank is "bankrupt," "bleeding cash," and has a "negative operating balance sheet."

29. More recently, Hudson has engaged in a campaign to harass and threaten Nubank's executives' lives and safety. On September 30, 2020, Hudson sent an e-mail to Nubank's founders in which he stated "I want you to know that when we settle up it's going to cost you your life! I think watching you in a bull ring in Mexico would be most fitting." As another example, on January 31, 2021, Hudson sent an e-mail to Nubank's founders warning, "If you were to try in [sic] leave the country I would be concerned as to your safety."

30. Hudson has registered the internet domain name www.nubank.com, which wholly incorporates Nubank's mark. While the domain was originally registered in 1997, Hudson most recently renewed his registration on November 3, 2020. *See*

March 26, 2021 WHOIS database domain listing for the domain name www.nubank.com, attached hereto as **Exhibit C.**

31. Because Hudson's domain name is almost identical to Nubank's domain name, customers of Nubank unintentionally visit Hudson's domain.

32. Hudson has used the domain as merely a landing page that linked to websites of other companies that compete with Nubank, including, for example, links to the website for Eastern Bank and to websites designed to assist users in searching for credit card options. *See* screenshot of the webpage associated with the www.nubank.com domain, attached as **Exhibit D.**

33. However, in 2020, Hudson changed the website connected to his domain to include the logo depicted below:



34. Hudson's logo wholly incorporates Nubank's registered mark and copies elements of logos used by Nubank, including the confusingly similar purple color incorporated into the logo.

35. Overall, Hudson does not use his domain for any legitimate purpose other than to hold ownership of a ".com" domain that incorporates Nubank's mark and to further his efforts to confuse consumers and to cause them to falsely associate him with Nubank. Hudson recently renewed his registration for the domain name in bad faith with the goal of holding it so that Nubank could not acquire it and use it for legitimate business purposes. As a further illustration of Hudson's bad faith, he has demanded several hundred thousand dollars from Nubank to purchase the domain name from him, a figure that is grossly higher than the amount he paid to purchase the domain from the domain name registrar.

## COUNT I
### Trademark Infringement
### (15 U.S.C. §1114(1))

36. Nubank specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

37. Nubank has continually used its trademark as a source identifier in connection with its goods and services in interstate commerce within the United States and around the world. Nubank's rights in its mark have priority over Hudson's use by virtue of Nubank's long and continuous use of it in commerce and the federal rights to the NUBANK mark conferred by Nubank's '728 Registration. Without authorization or consent of Nubank, Hudson advertises goods and services to the

general public using trademarks and designations that are confusingly similar to Nubank's trademark.

38. Hudson's use of Nubank's trademark and similar designations for competing goods and services is likely to cause confusion, mistake, and deception among the general public as to the origin of the goods and services advertised by Hudson, or as to whether the goods and services are sponsored by/affiliated with or otherwise connected to Nubank in violation of 15 U.S.C. §1114(1).

39. By using the NUBANK® mark and confusingly similar designations and images thereto, and by advertising goods and services to the general public in connection with such marks and/or confusingly similar variants thereof, for profit and without Nubank's authorization, Hudson is depriving Nubank of its exclusive right to control and benefit from its trademark. If permitted to continue, Hudson's actions will nullify Nubank's right to exclusive use of its trademark, free from infringement, and will have a substantial and adverse effect on Nubank's existing and projected future business of marketing goods and services identified by its trademark.

40. Nubank has been damaged by Hudson's activities and conduct. Hudson has profited thereby and, unless their conduct is enjoined, Nubank's good will and

reputation will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.

41. By using the NUBANK® mark and confusingly similar designations, and advertising goods and services to the general public in connection with such marks and/or confusingly similar variants thereof, Hudson has intentionally and knowingly infringed Nubank's rights.

42. By virtue of Hudson's actions, he has engaged in trademark infringement in violation of 15 U.S.C. §1114.

## COUNT II
### Unfair Competition and False Designation of Origin
### (15 U.S.C. §1125(a))

43. Nubank specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

44. Hudson uses marks, designations and images to advertise goods and services that are likely to cause confusion, mistake, and deception among the general public as to the origin of the goods and services, or as to whether Hudson is sponsored by, affiliated with, or otherwise connected with Nubank, in violation of 15 U.S.C. §1125(a).

45. Additionally, Hudson's false and misleading representations of fact about his purported business and about Nubank's business also violate 15 U.S.C. §1125(a).

46. Nubank has been damaged by Hudson's activities and conduct. Hudson has profited thereby and, unless their conduct is enjoined, Nubank's reputation and goodwill will continue to suffer irreparable injury that cannot be adequately calculated or compensated by money damages.

47. By using marks, designations, and images that are confusingly similar to Nubank's trademark to advertise goods and services to the general public, and by making false and misleading representations of act about his purported business and about Nubank's business, Hudson has intentionally and knowingly engaged in unfair competition and false designation of origin.

48. By virtue of Hudson's actions, he has engaged in unfair competition and false designation of origin in violation of 15 U.S.C. §1125(a).

## COUNT III
### False Advertising
### (15 U.S.C. §1125(a)(1)(B))

49. Nubank specifically incorporates and references the allegations asserted in each of the preceeding paragraphs, as if fully set forth herein.

50. In commercial advertising and promotion, including through statements published on LinkedIn, Hudson falsely purports that he has a company associated with the banking and fintech industry, and Hudson has made false statements about

the financial health of Nubank's business and falsely asserted that Nubank stole its brand from Hudson.

51. Hudson's published statements about Nubank's business are false and, upon information and belief, his statements about his own purported business are false because he does not have a business associated with the banking and fintech industry.

52. Hudson's false advertising harms Nubank because the statements cause consumers to falsely associate Hudson with Nubank and to associate his purported business with Nubank, thereby eroding the reputation of Nubank.

53. By virtue of Hudson's actions, he has engaged in false advertising in violation of 15 U.S.C. §1125(a)(1)(B).

## COUNT IV
### Anticybersquatting Consumer Protection Act
### (15 U.S.C. §1125(d))

54. Nubank specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

55. Nubank engages in interstate activities designed to promote its goods and services, as well as the goodwill associated with its trademark.

56. The mark NUBANK® has been, and will continue to be, known throughout the United States and around the world as identifying and distinguishing Nubank's business.

57. Without authorization or consent, Hudson incorporates the NUBANK® mark in his domain name www.nubank.com.

58. Hudson has a bad faith intent to profit from the NUBANK® mark, within the meaning of 15 U.S.C. §1125(d)(1)(A)(i), which is evidenced by Hudson's demand that Nubank pay him several hundred thousand dollars to purchase www.nubank.com from him.

59. Hudson registered, traffics in, and uses domain names that are confusingly similar or dilutive of the NUBANK® mark, which, at the time of the registration of Hudson's domain name, was distinctive and/or famous within the meaning of 15 U.S.C. §1125(d)(1)(A)(ii).

60. Nubank has been damaged by Hudson's activities and conduct. Hudson has profited thereby and, unless Hudson is required to forfeit and transfer to Nubank all domain names that incorporate the NUBANK® mark pursuant to 15 U.S.C. §1125(d)(1)(C) and his conduct is enjoined pursuant to 15 U.S.C. §1116(a), Nubank's reputation and goodwill will continue to suffer irreparable injury that cannot be adequately calculated or compensated by money damages.

61. By virtue of Hudson's actions, he has engaged in cybersquatting in violation of 15 U.S.C. §1125(d), and Nubank is entitled to statutory damages pursuant to 15 U.S.C. §1117(d).

## COUNT V
### Declaratory Judgment
### 28 U.S.C. §2201

62. Nubank specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

63. A genuine and actual controversy exists between Nubank and Hudson regarding rights in the NUBANK® mark.

64. Under 28 U.S.C. §2201, the Court may declare the rights of Nubank.

65. As outlined herein, Nubank's NUBANK® mark is registered with the United States Patent and Trademark Office.

66. Furthermore, Nubank has continually used the NUBANK® mark in connection with its goods and services and the term "Nubank" has come to be associated with Nubank.

67. Therefore, Nubank respectfully requests a declaration that: (i) Nubank has the exclusive right to use the NUBANK®; and (ii) Hudson has no right to use "Nubank" or any confusingly similar word or designation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Nubank respectfully requests that this Court:

i. Preliminarily and permanently enjoin Hudson to cease and desist from using Nubank's trademark and any confusingly similar designations and to discontinue his current infringing practices pursuant to 15 U.S.C. §1116.

ii. Enter judgment in favor of plaintiff Nubank on the counts asserted herein and award Nubank all damages caused by the acts forming the basis of this Complaint, including, without limitation, Hudson's profits and Nubank's actual damages.

iii. Issue a declaration that Nubank has the exclusive right to use the NUBANK® mark and Hudson has no right to use "Nubank" or any confusingly similar word or designation.

iv. Award treble damages to Nubank pursuant to 15 U.S.C. §1117(a) due to Hudson's willful, knowing, and intentional infringement of Nubank's trademark.

v. Award statutory damages to Nubank pursuant to 15 U.S.C. §1117(d) due to Hudson's cybersquatting activities.

vi. Order Hudson to pay Nubank's the cost of this action and Nubank's reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a).

vii.    Order Hudson to destroy all products, items, articles, labels, signs, prints, packages, wrappers, receptacles and advertisements bearing Nubank's trademark, pursuant to 15 U.S.C. §1118.

viii.   Order Hudson to forfeit and transfer to Nubank the domain name [www.nubank.com](www.nubank.com) and all domain names that incorporate the NUBANK® mark or any other confusingly similar term.

ix.     Order Hudson to cease and desist from all use of "Nubank" as part of his trade name and in connection with his business.

x.      Award Nubank such further relief as it deems just, proper, and equitable.

## JURY DEMAND

Nubank demands a trial by jury on all issues so triable.

Respectfully submitted this 31st day of March, 2021.

*[SIGNATURES APPEAR ON THE NEXT PAGE]*

*/s/ Lucas W. Andrews*

Lucas W. Andrews
landrews@watsonspence.com
WATSON SPENCE LLP
999 Peachtree Street, NE
Suite 1130
Atlanta, GA 30309
Tel.  (229) 436-1545
Fax.  (678) 331-7070

*Matthew T. McLaughlin*

Matthew T. McLaughlin
(*pro hac vice forthcoming*)
mmclaughlin@nixonpeabody.com
Tarae L. Howell
(*pro hac vice forthcoming*)
thowell@nixonpeabody.com
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, MA 02109
Tel. (617) 345-1000
Fax (617) 345-1300

David L. May
(*pro hac vice forthcoming*)
dmay@nixonpeabody.com
NIXON PEABODY LLP
799 9th Street NW
Suite 500
Washington, DC 20001
T: (202) 585-8000
F: (202) 585-8080

***Attorneys for Plaintiff Nu Pagamentos S.A.***