IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| NU PAGAMENTOS S.A.–INSTITUIÇÃO DE PAGAMENTO<br><br>Plaintiff,<br><br>v.<br><br>GEORGE DANIEL HUDSON JR.<br><br>Defendant. | Civil Action No.<br>2:21-cv-00069-RWS<br><br>**PLAINTIFF'S BRIEF REGARDING DISCOVERY OF SLACK MESSAGES IN RESPONSE TO THE QUESTION POSED BY THE COURT'S ORDER OF APRIL 7, 2022 (Dkt. No. 88)** |

Pursuant to the Court's Order issued on April 7, 2022 (Dkt. No. 88), Plaintiff Nu Pagamentos S.A.–Instituição de Pagamento ("Plaintiff" or "Nu Pagamentos") hereby submits this Brief explaining why the Court should not require it to search Slack messages and requests that the Court deny Defendant's Motion to Compel with respect to Slack messages for the following reasons.

I. **INTRODUCTION**

Nu Pagamentos should not be compelled to undertake a search of Slack messages for at least three reasons. ***First***, Defendant's document requests and motion to compel did not even *request* the production of Slack messages. Nor did the Defendant's Reply Brief—the first time Defendant raised the issue of Slack messages (Dkt. No. 60 at 4)—identify the specific relevance of such messages to and merely cites to the fact the Slack application is available for Nu Pagamentos' employees to send messages internally. ***Second***, the process of collecting and

searching Slack simply to determine whether any relevant messages exist will be extremely costly and time consuming. Indeed, due to the format of how messages are stored, the use of search terms is impossible and each message must be reviewed "manually." **Third**, there is little potential benefit of searching Slack messages over emails and LinkedIn messages—and doing so would, at best, result in the production of duplicative information already disclosed by Nu Pagamentos. Put simply, searching Slack messages is akin to looking for a needle in the haystack, which is not proportional to the needs of the case under Rule 26.

## II.   LEGAL ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Even if relevant, Fed. R. Civ. P. 26(b)(1) provides that discovery may only be sought where it is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

### A.   <u>Defendant Failed to Identify What Possible Relevant Slack Messages *May* Exist.</u>

Defendant seeks to dramatically expand the scope of discovery at the eleventh hour simply to continue to drive up the costs of this litigation. Indeed, in his First Requests for Production of Documents, Defendant specifically only requested e-mail and LinkedIn messages from Nu Pagamentos (*see* Dkt. No. 51-2,

Requests 36-44), which was also the focus of the Parties' meet-and-confer conferences. Nor did Defendant's Motion to Compel even mention, let alone request, the production of Slack communications (*See* Dkt. No. 51). For this reason alone, the Court should deny Defendant's request.

Putting aside Defendant's timing, the Court should deny the request because Defendant has not met his burden to require Nu Pagementos to undertake a search of Slack communications. "A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes (2015 Amendment). Aside from citing the fact Nu Pagementos' founders David Velez and Cristina Junqueira testified that they used Slack among other forms of communication, Defendant has not identified any information that may exist within Slack specifically relevant to any issue in this case. While it is true that Nu Pagementos' employees can use for a variety of communications, it is not the only form of communication used within the company. For example, email is still the standard form of communication with those outside of the company, and is frequently used internally as well. (Dotti Decl. at ¶ 2.)

Moreover, although Defendant did not show the Court the deposition transcripts of either Mr. Velez or Ms. Junqueira, neither testified that they—or anyone else for that matter—used Slack to discuss anything relating to Hudson or this lawsuit. (*See* **Exhibit A** to Zhai Decl., Excerpts of Depo. Tr. of D. Velez; and **Exhibit B** to Zhai Decl., Excerpts of Depo. Tr. of C. Junqueira.) Indeed, both Mr.

Velez and Ms. Junqueira testified that Slack was used primarily for company announcements. For example, in the deposition of Mr. Velez:

> Q: What are the [the Slack channels] that you spend the most amount of time maybe that you can remember?
>
> A: There is one around announcements global, which is all the company announcements for the entire company. There's one announcement Brazil for the team in Brazil. One announcement in Mexico for the team in Mexico. One announcement in Columbia for the team in Columbia. One for Berlin for the team in Berlin. One in Argentina for the team in Argentina. There is one channel for business units, so one for the credit card business unit, one for the NuConta, one for lending, one for investments, one for marketplace, one for insurance, one for growth, one for collections, one for credits. There's one for the management team, for the executive team of the company. There is a random channel where people send random stuff about anything, a marketing one where people add marketing announcements, one with PR. People put PR announcements.

(Zhai Decl., Ex. A at 198:11-199:5.) The fact is that neither Mr. Velez, Ms. Junqueira, or Nu Pagamentos' 30(b)(6) witness said anything to suggest there has ever been any conversation relevant to Hudson or this lawsuit over Slack. This makes sense, as it is not a normal practice for Nu Pagamentos' employees to make announcements about formal legal affairs on Slack. (Dotti Decl. at ¶ 3.)

Defendant baselessly claims "[t]here are certainly hundreds, if not thousands of relevant messages in Plaintiff's Slack archives," (Dkt No. 60 at 4), but he fails to point to any evidence that even remotely suggests that to be true. *See, e.g., Gladden v. P&G Distrib. LLC*, No. 1:19-CV-2938-CAP-JSA, 2020 U.S. Dist. LEXIS 256415, at *27 (N.D. Ga. July 20, 2020) (denying motion to compel allegedly

unproduced e-mails, texts, and instant messages when the movant "has no evidence to support its claim that Ms. Hayes must be in possession of other documents related to that recording").

B. **Searching and Reviewing Slack Messages Even to Determine Whether Relevant Messages Exist Will Be Extremely Burdensome**

To directly answer the question posed by the Court, using search terms within Slack messages is simply not possible like it is with emails. There are three factors that make discovery of Slack messages extremely costly and time consuming: (i) the process of obtaining Slack data; (ii) the process of converting Slack data into a reviewable form; and (iii) the process of actually reviewing Slack messages for relevance and privilege.

1. *Slack is Not Searchable Under Nu Pagamentos' Current Plan*

First, under Nu Pagamentos' current subscription plan, Slack messages cannot be searched for specific terms and doing so would require the company to purchase Slack's "e-discovery API" upgrade. (Dotti Decl. at ¶ 5); *see also* Slack's Guide to Discovery APIs ("Data exported via the Discovery API comes in JSON format.").[1] Requiring Nu Pagamentos to upgrade its plan—which would likely have to be carried out throughout the organization as opposed to on an employee-by-employee basis—imposes an undue burden and cost. *See* Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of [ESI] from sources that the party identifies as not reasonably accessible because of undue burden or cost.").

---

[1] *Available at* https://slack.com/help/articles/360002079527-A-guide-to-Slacks-Discovery-APIs#ediscovery-.

Courts have held that companies need not bear the burden of upgrading their Slack subscription plan solely for the purpose of conducting a search for responsive documents in a litigation.  For example, in *Laub v. Horbaczewski*, the Court held Slack messages did not need to be produced in part because "while Slack offers a utility tool that permits the export and search of messages sent through private channels and of direct messages, the tool is only available to accounts on Slack's "Plus" tier or above, which Defendants do not have."  2020 WL 7978227 at *4, fn. 3 (C.D. Cal Nov. 17, 2020) (citing *Calendar Research LLC v. StubHub, Inc.*, Case No. 17-4062-SVW (SSx), 2019 WL 1581406, at *4 (C.D. Cal. Mar 14, 2019) (same proposition); *see also Gen. Elec. Co. v. Wilkins*, 2012 WL 570048 (E.D. Cal. Feb. 21, 2012) (finding back-up tapes not reasonably accessible and requested party failed to show good cause to require producing party "to expend the resources necessary to make them reasonably accessible").

### 2. *Slack Data Must Be Converted to Readable Form*

Unlike emails, which can be easily searched and viewed individually, Slack messages are freeform and cannot be readily viewed without special software.  Even if Nu Pagamentos were to purchase Slack's "e-discovery API" upgrade, messages can only be exported as text JavaScript Object Notation ("JSON") files.  (Dotti Decl. at ¶ 5); *see also* Slack's Guide to Discovery APIs ("Data exported via the

Discovery API comes in JSON format.").[2]  JSON formatted files are essentially unintelligible computer code, for example shown below[3]:

```
{
    "client_msg_id": "508bb955-ea92-4df5-ac6a-e22d693518a9",
    "type": "message",
    "text": "<@U8JHR4L14> did you share the image on DB?",
    "user": "U8QQRMTME",
    "ts": "1542192000.000900",
    "team": "T8HRZJKL5",
    "user_team": "T8HRZJKL5",
    "source_team": "T8HRZJKL5",
    "user_profile": {
        "avatar_hash": "g922bbbc52ce",
        "image_72": "https:\/\/secure.gravatar.com\/avatar\/2bbbc52cece006563a4eadb661c10c.jpg?s=72&d=https%3A%2F%2Fa.slack-ge.com%2F00b63%2Fimg%2Favatars%2Fava_0011-72.png",
        "first_name": "",
        "real_name": "Nerea",
        "display_name": "",
        "team": "T8HRZJKL5",
        "name": "nerea",
        "is_restricted": false,
        "is_ultra_restricted": false
    }
},
```

In order to view and search Slack messages for specific terms, Nu Pagamentos would need to retain a third-party vendor to convert a JSON file that contains every single message belonging to a user to a readable format. *See, e.g., Milbeck v. Truecare*, Inc., 2019 WL 4570017, at *3 (C.D. Cal. May 2, 2019) (quoting expert testimony that "There is no way to isolate any specific information [on Slack], such as particular channels or users and limit the collection to only that data."); *see also* Slack's Guide to Discovery APIs (noting that "If a different format

---

[2] *Available at* https://slack.com/help/articles/360002079527-A-guide-to-Slacks-Discovery-APIs#ediscovery-.

[3] The Beginner's Guide to Slack eDiscovery (*available at* https://onna.com/blog/the-beginners-guide-to-slack-ediscovery/)

is required, the Discovery API can be connected to a third-party eDiscovery or DLP app.")[4] and The Beginner's Guide to Slack eDiscovery (noting that "the Slack data you export will come out as a JSON file [but] provides no contextual information and will take even the most diligent legal teams extended time and effort to review.")[5]  Only after incurring the cost to download and convert these files, Nu Pagamentos would then be able to review and conduct searches of particular terms within the messages just to confirm whether relevant Slack messages exist or not.

### 3. *The Enormous Time and Costs to Review Slack Messages*

On top of the burden to collect and convert JSON files, Nu Pagamentos would likely need to spend weeks and incur hundreds of thousands of dollars to review messages manually.  (Zhai Decl. at ¶¶ 4-5.) Unlike emails stored as individual files, Slack stores every message ever sent by a user in one file without any subject lines or other context.  Thus, using search terms on a converted JSON file would only highlight the messages contain the search term.  However, most messages cannot be evaluated without reading the context in which it was sent (*i.e.*, the preceding or subsequent messages).  (Zhai Decl. at ¶ 4.)  For example, a user may send a message regarding domain names on one day, then discuss other irrelevant topics before continuing the discussing weeks later.  (Dotti Decl. at ¶ 4.) To determine whether the discussion of domain names involved privileged legal

---

[4] *Available at* https://slack.com/help/articles/360002079527-A-guide-to-Slacks-Discovery-APIs#ediscovery-

[5] *Available at* https://onna.com/blog/the-beginners-guide-to-slack-ediscovery/

advice, a reviewer would need to read every message after the first instance of the term appearing in a message. (Zhai Decl. at ¶ 4.)

Although Nu Pagamentos would need to purchase a Data Loss Prevention tool to determine the exact total number of messages sent and received by David Velez and Cristina Junqueira on Slack, given that Mr. Velez and Ms. Junqueira are founders of the company who have been using Slack since 2013, they will certainly have an extensive Slack message history. (Dotti Decl. at ¶ 6.) Based on the time spent and costs incurred by Nu Pagamentos to collect and review other documents in response to Defendant's Requests for Production, it could take dozens if not hundreds of hours to review Mr. Velez and Ms. Junqueira's Slack messages, at a cost of upwards of $100,000. (Zhai Decl. at ¶ 5.) Accordingly, the production of Slack messages is generally disfavored in light of the proportionality requirements of Rule 26.

For example, in *Milbeck v. TrueCar, Inc.*, the court held that the defendant did not need to search and produce Slack messages even when relevant, in part because "manual review will be necessary to identify the start and end of relevant conversations." CV 18-02612- SVW, 2019 U.S. Dist. LEXIS 165649, at *7 (C.D. Ca. May 2, 2019), *see also Laub v. Horbaczewski*, 2020 WL 7978227 (C.D. Cal Nov. 17, 2020) ("Plaintiffs' request for the Slack messages involving Kanes is not proportional to the needs of the case and Plaintiffs' request to compel production of those documents is DENIED."). Moreover, for similar reasons, other instant messaging platforms have been excluded from discovery. *See, e.g., Rindfleisch v. Gentiva Health Servs.*, No. 1:10-CV-03288-SCJ, 2015 U.S. Dist. LEXIS 183260,

at *9 (N.D. Ga. Feb. 10, 2015) ("The Court understands the relevance of credit, debit, and cash receipts, and even tax returns, but it cannot ascertain why Defendant would need to read every "e-mail, voicemail, text message[], multi-media message[], *instant message*[], on-line content from social media services . . . Such a request is overly broad, and the burden it forces on Plaintiffs "outweighs its likely benefit, considering the needs of the case, . . . the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.").

### C. Even if Relevant Messages Exist, There Are No Likely Benefits Over Other Documents Already Produced by Nu Pagamentos

A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ." Fed. R. Civ. P. 26(b)(2)(C). *See, e.g., Rindfleisch v. Gentiva Health Servs.*, No. 1:10-CV-03288-SCJ, 2015 U.S. Dist. LEXIS 183260, at *9 (N.D. Ga. Feb. 10, 2015) (denying motion to compel instant messengers and other forms of communications in part because "The Court believes that by allowing Defendant's first three requested categories of evidence combined with other discovery tools, including five additional depositions, Defendant has more than sufficient resources to discover the type of relevant evidence that a catch-all category such as this might provide.")  Here, Defendant did not and cannot identify any unique benefits to searching Slack messages that would not be cumulative or duplicative of the information found in documents and emails already produced by Nu Pagamentos.  Indeed, since the beginning of this litigation,

Defendant has engaged in tactics aimed at driving up legal costs for Nu Pagamentos,[6] including the instant request for production of Slack messages.

On top of being excessively burdensome and costly expedition without any discernible benefit, the amount in controversy does not justify the expense. It is indisputable that Nu Pagamentos is a start-up company that has never turned a profit in its existence. Because Defendant seeks to recover Nu Pagamentos' profits for his counterclaims, his maximum recovery is $0, an amount in controversy obviously less than the cost to collect and produce Slack messages. In any event, the relevant information in this case can be obtained through Nu Pagamentos' documents and emails—other sources that are "more convenient, less burdensome, or less expensive" under Fed. R. Civ. P. 26(b)(2)(C).

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel with respect to Slack messages.

---

[6] *See, e.g.,* Transcript of Court Proceedings at 19 ("I mean, I cannot imagine the costs associated with this [case].")

Dated: April 21, 2022                                Respectfully submitted,

Lucas W. Andrews                                     /s/ *Matthew T. McLaughlin*
(GA Bar No. 019533)                                  Matthew T. McLaughlin
luke@poolehuffman.com                                (*admitted pro hac vice*)
**POOLE HUFFMAN LLC**                                mmclaughlin@nixonpeabody.com
3562 Habersham at Northlake                          **NIXON PEABODY LLP**
Building J, Suite 200                                Exchange Place
Tucker, GA 30084                                     53 State Street
Tel: (770) 988-6574                                  Boston, MA 02109
Fax: (888) 709-5723                                  Tel: (617) 345-1000
                                                     Fax: (617) 345-1300

Mark S. Zhai
(*admitted pro hac vice*)                            David L. May
mzhai@nixonpeabody.com                               (*admitted pro hac vice*)
**NIXON PEABODY LLP**                                dmay@nixonpeabody.com
300 South Grand Ave., Suite 4100                     **NIXON PEABODY LLP**
Los Angeles, CA 90071                                799 9th Street NW, Suite 500
Tel: (213) 629-6000                                  Washington, DC 20001
Fax: (213) 629-6001                                  Tel: (202) 585-8000
                                                     Fax: (202) 585-8080

***Attorneys for Plaintiff Nu Pagamentos S.A.–Instituição de Pagamento***

## CERTIFICATION OF FONT SIZE

Pursuant to Local Rule 7.1(D), undersigned counsel for Plaintiff Nu Pagamentos S.A.–Instituição de Pagamento certifies that the foregoing document has been prepared with one of the font and point selections approved by the Court in LR 5.1(B), 14-point Times New Roman.

/s/ *Matthew T. McLaughlin*
Matthew T. McLaughlin

## CERTIFICATE OF SERVICE

Undersigned counsel for Plaintiff Nu Pagamentos S.A.–Instituição de Pagamento certifies that on April 21, 2022, upon electronic filing of the foregoing document, a copy was served via ECF to all registered users in the above-captioned matter.

/s/ *Matthew T. McLaughlin*
Matthew T. McLaughlin