THE FOLLOWING IS THE PDF OF AN OFFICIAL TRANSCRIPT.
OFFICIAL TRANSCRIPTS MAY ONLY BE FILED IN CM/ECF BY THE OFFICIAL
COURT REPORTER AND WILL BE RESTRICTED IN CM/ECF FOR A PERIOD OF 90
DAYS.  YOU MAY CITE TO A PORTION OF THE ATTACHED TRANSCRIPT BY THE
DOCKET ENTRY NUMBER, REFERENCING PAGE AND LINE NUMBER, ONLY AFTER
THE COURT REPORTER HAS FILED THE OFFICIAL TRANSCRIPT; HOWEVER, YOU
ARE PROHIBITED FROM ATTACHING A FULL OR PARTIAL TRANSCRIPT TO ANY
DOCUMENT FILED WITH THE COURT.

```
 1                    UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF GEORGIA
 2                         ATLANTA DIVISION

 3

 4 NU PAGAMENTOS S.A. -              )
   INSTITUICAO DE PAGAMENTO,         )
 5                                   )
          PLAINTIFF,                 )
 6                                   ) DOCKET NO. 2:21-CV-00069-RWS
          -VS-                       )
 7                                   )
   GEORGE DANIEL HUDSON, JR.,        )
 8 ET AL,                            )
                                     )
 9        DEFENDANT.                 )

10

11           TRANSCRIPT OF DISCOVERY DISPUTE PROCEEDINGS
              BEFORE THE HONORABLE RICHARD W. STORY
12                 UNITED STATES DISTRICT JUDGE
                        NOVEMBER 16, 2022

13

14 APPEARANCES:

15 ON BEHALF OF THE PLAINTIFF:

16      LUCAS W. ANDREWS, ESQ.
        MATTHEW T. MCLAUGHLIN, ESQ.
17      NIXON PEABODY

18
   ON BEHALF OF THE DEFENDANT:
19
        ERIC MENHART, ESQ.
20      LEXERO LAW

21

   STENOGRAPHICALLY RECORDED BY:
22

23                  PENNY PRITTY COUDRIET, RMR, CRR
                        OFFICIAL COURT REPORTER
24                   UNITED STATES DISTRICT COURT
                          ATLANTA, GEORGIA
25
```

```
 1        (PROCEEDINGS HELD IN OPEN COURT AT 9:34 A.M., GAINESVILLE)

 2             COURTROOM DEPUTY CLERK:  The Court now calls for a

 3   hearing in Civil Action 2:21-CV-69, Nu Pagamentos v. Hudson.

 4             Counsel, please state your name for the record.

 5             MR. ANDREWS:  Good morning, your Honor.  This is Lucas

 6   Andrews with Matthew McLaughlin for the plaintiffs.

 7             THE COURT:  Good morning.

 8             MR. MENHART:  Good morning, your Honor.  Eric Menhart on

 9   behalf of Defendant, David Hudson.

10             THE COURT:  Good morning.

11             Gentlemen, thanks for coming up this morning.  I felt

12   that we would better be served to just get everyone in the room

13   together because we had a number of issues that were floating out

14   there that I think we can best resolve by just all getting

15   together and working through these so you're in a position to move

16   forward with the case.

17             It's my intention to just work through the motions that

18   have been filed that I had indicated in my scheduling order would

19   be addressed today.  And then there were a couple of issues that

20   were raised through e-mails that you had sent to Ms. Kemp.  And I

21   want to get those resolved today as well so that hopefully we're

22   in a position to move forward in an expeditious and efficient

23   manner.

24             The first motion I wanted to take up was the defendant's

25   motion for reconsideration of the expert discovery deadline.  And
```

```
 1   the Court has ruled that the expert discovery is concluded.  And
 2   the defendant has requested that the Court vacate that ruling and
 3   allow some additional discovery.  I've denied that request but did
 4   allow the motion to be filed to preserve this issue for the
 5   defendant since we did that through our discovery procedure where
 6   you don't get to file a brief and have a record made and I wanted
 7   to preserve the issue for the defendant.
 8            But also I wanted to -- there is one part of that that I
 9   was interested in hearing a little bit more about from the
10   defendant.  And that's the -- the argument was made later in the
11   brief on the motion about the need to supplement the earlier filed
12   expert report by your expert and that -- and certainly there is
13   authority for supplementation of expert reports.  I would like to
14   hear from you in support of that argument, why you think this
15   would be a supplementation that should be permitted even post
16   deadline discovery.  And what's prompted the need for the
17   supplementation and what the nature of that would be?
18            MR. MENHART:  Sure, your Honor.  By the way, would you
19   prefer I stand when addressing the Court?
20            THE COURT:  If you need to use your laptop, you may sit
21   there.  Just make sure that you use the microphone so the court
22   reporter and I can hear you well.
23            MR. MENHART:  I'll be happy to do that.  Thank you very
24   much.
25            Your Honor, you're absolutely right, supplementation is
```

```
 1  not only typical in cases I'm sure you're aware but it's outright
 2  noted in the rule that supplementation is usually appropriate.
 3  And the primary issue that most courts have said is, Hey, look,
 4  does the other side have the right to understand what's going on
 5  from the expert witness of which was timely disclosed?  And in
 6  this particular instant there's no dispute that our witness was
 7  disclosed in January of 2022.
 8          So what we did was we supplemented the report.  I
 9  understand there's some disagreement here about the timing, but
10  we'll leave that to the side as the Court has asked me to do.  And
11  the supplementation is very consistent with the original report.
12  The reason for the supplementation was two things:
13          First, there was an expert discovery of the plaintiff's
14  expert witness.  They've never requested a deposition of our
15  expert and we've made him very available.  So there was a
16  deposition of the plaintiff.  That individual raised some
17  concerns, as experts often do, about the report.  So my expert
18  reviewed that.  My expert said, Okay, I don't agree with what the
19  expert is saying here but I understand there's opportunity to make
20  amendments.
21          And, again, there's no error here.  We're not suggesting
22  that our expert made any error.  There's opportunity to make
23  amendments to supplement to notify the plaintiff of what I'm going
24  to say at trial.  That was the point of the supplementation.
25          The Court can certainly -- and, of course, these are
```

1  very thick reports, damages reports from intellectual property

2  experts.  But the Court can feel free to look at the reports and

3  you'll see that the heart of the expert opinions are virtually

4  identical.  What the expert has said is, Hey, look, this is the

5  basis for my opinion, this is what I'm going to do.

6       The exact same basis is in place with the amended expert

7  report but he addressed two things:

8       First, there's some slightly more specific calculations;

9       And then, secondly, in our opinion most importantly, he

10  addressed some of the issues that were not in existence when he

11  first filed his first report because the expert discovery, the

12  expert deposition happened after he had filed his original report.

13  He could not have possibly had any opinion about something that

14  had not happened.  So that's our position there.

15       And, you know, certainly the plaintiff has every right

16  to say what they would like to say here.  But in my experience --

17  and I know there are different folks out there that have different

18  experiences, but in my experience supplemental expert reports are

19  very common in litigation, particularly intellectual property

20  litigation.

21       And one final point, I think it's quite likely we might

22  have additional supplementation by either my expert or their

23  expert because this is an ongoing case with numbers that are

24  ebbing and flowing.  And at the end of the day what's most

25  important is that each party has the right to know what the other

1  party's expert is going to be saying at trial.

2          So we felt truly and honestly that we were complying

3  with the rule by providing a revised report that was more specific

4  about what we were going to say.

5          I'll leave it at that.  And I'm happy to address

6  anything the Court would like.

7          THE COURT:  Part of my concern was that I saw it as a

8  reopening of discovery on the expert, which to me suggested not

9  just supplementation but the likelihood of additional discovery

10  depositions and so forth.  And for me that is beyond the scope of

11  a supplementation.  And that was the concern that I had.

12          In my view formal discovery, as it's contemplated under

13  the rules, had ended.  And certainly I recognize the authority and

14  the expectation that experts will supplement their expert reports

15  because -- and they had better because if they get outside that at

16  trial, I'm not going to let them testify to things they haven't

17  disclosed in their reports.  So that's the reason why we allow

18  supplementation.

19          But the supplemental report, is it in the record?  Has

20  it been filed?

21          MR. MENHART:  It has been designated highly confidential

22  effectively by plaintiff because of the underlying documents that

23  the expert has relied upon.  I do believe it's in the record, your

24  Honor, but I would have to double-check on that.  And I would be

25  more than happy to do that for you during the course of this

1   hearing.

2           THE COURT:  Do y'all know whether that's in the record?

3   I know the January report is in there, that's an exhibit to your

4   motion to seal at 115, so I have that one.  But I'm not sure that

5   I have the supplement.

6           MR. MCLAUGHLIN:  I don't believe it is, your Honor.

7           THE COURT:  Okay.  Let me hear from plaintiff.

8           MR. MCLAUGHLIN:  Sure, your Honor.  Thank you.

9           I understand the rule on supplementation.  That is not

10  what we are arguing about.  In this amended report it's two

11  things.  It is to specifically -- it's a rebuttal to our rebuttal

12  expert.  He says that.  I mean, he says, I am drafting this report

13  to respond to the plaintiff's expert's positions.

14          He not only -- and the case law that we cited in our

15  motion to the Court is very clear that that is precisely what

16  courts do not allow.  They do not allow parties to do this

17  never-ending supplementation under the guise of what the rule

18  allows to say, Oh, I'm going to change course, or I want to change

19  something that I didn't think to address before.  And that's

20  exactly what we have here.

21          The other part is his new report redefines what he

22  defines as profits under the Lanham Act.  It goes to the core of

23  what he originally in his expert view said profits under the

24  Lanham Act.  When confronted by our expert report, he wants to

25  change it.  And that is not allowed.  You can't change the course

1    of your opinion.  It would then, as the case would say, open the

2    door.  And then should our expert get an opportunity to rebut

3    that?  And it would be never ending.  And it would open up

4    depositions again to confront the witnesses on what they said

5    previously.

6            So our position is, as the Court already recognized, as

7    the parties already agreed, the deadline for expert reports were

8    established.  The deadline for any expert discovery was

9    established.  This does not meet the definition of

10   supplementation.  And the Court should hold true to its prior

11   order.

12           THE COURT:  Mr. Menhart, let me ask you this:  You've

13   indicated this was prompted by issues that were raised that you

14   had not anticipated from the filings by -- was it from the

15   deposition of their expert or was it from their expert report that

16   prompted this supplementation?

17           MR. MENHART:  I would say that it was a combination of

18   two things in particular.  Well, I want to be a little bit careful

19   here because I don't want to put words in the expert's mouth,

20   okay.

21           That being said, I believe the expert looked at the

22   facts that were raised by their expert.  And he effectively said,

23   Hey, look, I understand what she's saying.  I don't agree with it,

24   but here is why my report says what it says.

25           So, you know, it's effectively -- I want to be a little

1  bit careful here.  Look, did it happen after their expert report?
2  Of course it did, right?  I mean, we can all see the timeline.
3  But, again, we believe that we are trying to be good faith towards
4  the plaintiff in saying, Look, this is what your expert said.
5  Well, hey, look, we're handing it on a silver platter, here's what
6  we're going to say to that.  It's as simple as that.

7          I will say I agree with Mr. McLaughlin, I don't see it
8  in the record right now.  I'm more than happy to present it.

9          I do want to address one thing Mr. McLaughlin said.  He
10 said that the expert redefined profits.  No, he didn't.  Our
11 expert was very, very clear about not making any legal opinions
12 whatsoever, period.  That is something that I feel very confident
13 telling the Court right here.  And so we truly believe that we
14 were doing the right thing.  We looked at the rule.  There's quite
15 a bit of case law out there that says, Hey, look, if you don't
16 supplement, now you've got a bigger problem.

17         So we truly thought that we were doing the right thing.
18 And I have made it perfectly clear -- there's quite a bit of case
19 law out there, one of them is cited in our papers.  There's quite
20 a bit of case law out there that if they have any true beef
21 here -- look, we have no trial date.  If they have any true beef
22 here, Mr. Buss is available for deposition.  The courts are very,
23 very clear that that solves basically all ills.  So if they want a
24 deposition, they can have it.  And we've had him available for a
25 deposition for months.  And he will still be available for a

1  deposition.

2       So, again, we truly thought we were operating in good

3  faith.  We felt that the report was within the confines of the

4  original report.  And we outright do not think that this is

5  something that is -- really should be much of an issue at all, but

6  I understand it is and here I am addressing it.

7       So, again, I'll be happy to hear the Court's opinion on

8  any of that.

9       THE COURT:  Help me remember this, my recollection is

10 the supplemental report was done maybe in July?

11      MR. MENHART:  That's right.  Late July, your Honor.

12      THE COURT:  Let me ask you to file the supplemental

13 report with the clerk.  And it may be filed under seal because,

14 spoiler alert, I'm going to grant your motion to file the other

15 one under seal.  So I will allow this one to be filed under seal

16 just because I need the two to compare.

17      And let me tell you a little of the rub for me and it is

18 this:  I enforce fairly stringently the expert report requirement.

19 I don't like experts coming in and surprising the other side and

20 all of a sudden we've got opinions we didn't know about.  But

21 where this gets gray for me is when an expert is asked about what

22 another expert has said and whether -- that happens all the time

23 because sometimes I will allow experts to sit in the courtroom

24 when the other expert is testifying in anticipation that they're

25 going to be asked questions about what they testified to.  And

1  obviously they didn't give a report on what they were going to say

2  in response to the other witness's testimony.  Because you guys

3  are experienced, you know, you put someone on the stand, you think

4  you know what they're going to say and all of a sudden they've

5  said something you didn't know they were going to say, so it's new

6  to everyone.  So the other side gets a chance to respond to that.

7  And that might be the difference.

8          But in any event, this is not as clear-cut as the

9  offering of the opinion on which a party's case rests.  And that's

10 why for me, quite honestly, if it's a new model for determining

11 damages, that's a much bigger deal than merely a response to this

12 is why I disagree with what the other expert said.  I think that

13 is a good faith showing your hand -- whether you had to or not,

14 showing your hand in advance.  But to change the dynamics and to

15 have what is actually a new opinion after the time has expired is

16 more problematic to me.  I can't make that call without looking at

17 the report.

18         Let me ask you to just file that, if you would.  I'll

19 take a look at it.  I'll take that issue under advisement.  And I

20 will rule promptly on it.  Like I said, I want to get all these

21 things laid to rest as quickly as we can.  So I will take that

22 under advisement and rule on that.  Let me ask you if you will

23 within the next week get that on file.  And as I said, you may

24 provisionally file it under seal.

25         MR. MENHART:  Your Honor.

```
1            THE COURT:  Yes.

2            MR. MENHART:  I'm sorry, I don't mean to interrupt you.

3  I would be -- if it's okay with the plaintiff, I will be perfectly

4  comfortable just mailing it to the clerk if that would make it a

5  little bit easier --

6            THE COURT:  I'll let you just e-mail it to my law clerk.

7  Just e-mail it to my law clerk and we'll see it's made a part of

8  the record and that will save a lot of orders having to be done

9  and motions filed.  If you'll just e-mail it to her with a copy to

10 opposing counsel, then they'll give it to us quickly and we can

11 work on that.

12           MR. MENHART:  Agreed.  And happy to do that.  Thank you.

13           THE COURT:  And she'll give you her e-mail after we

14 finish.

15           MR. MENHART:  Thank you.

16           THE COURT:  The next motion was -- now we're moving to

17 the documents under seal.  And the first one I have is Docket

18 Number 102, which was the defendant's motion to file certain

19 documents under seal.  And this motion was prompted by the fact

20 that defendant wished to use certain documents that the plaintiff

21 had designated as confidential in support of its motion for

22 summary judgment.

23           So following the Court's rules, the motion was filed and

24 the documents were provisionally filed under seal so that the

25 opposing party whose documents were at issue could file a response
```

1    justifying the sealing of the documents.

2              It appeared to me from the filings that the only set of

3    documents that the plaintiff was addressing was Exhibit 12, which

4    is at Docket 101-3, which is the Slack messages.  And so that's

5    what I had focused on here.

6              And I've got some -- I'll just tell you, I've got some

7    reservations about the confidentiality of most of these messages.

8    I've read through them.  And let me hasten to say I have some

9    question about the confidentiality, meaning I'm not sure they're

10   confidential.  But I also have a significant question about the

11   admissibility because I think a lot of it would not be relevant.

12   I mean, there's a lot of stuff here that I -- I mean, some soccer

13   game people were watching, for example, is not something I would

14   anticipate we would need to get into in the evidence at trial.

15             I think there's some other things about working through

16   names and so forth that do become relevant, and particularly the

17   knowledge of the existence of Nubank out there with Mr. Hudson.

18   That's the kind of discussion -- and I struggle with why that

19   needs to be confidential.  I don't see any trade -- I mean, big

20   operational secret.  This was 2014.  This case has aired this

21   issue.  We know where everyone is on that issue and positions

22   being taken.

23             But let me hear from plaintiff about the need to protect

24   these e-mails.  And, again, this is from a confidentiality not a

25   relevance perspective.

1        MR. MCLAUGHLIN:  Understood, your Honor.  I agree with

2   you on the relevance issue.

3        But with respect to the confidentiality, as your Honor

4   knows, the parties submitted and the Court entered a protective

5   order at the outset of the case that allowed for the parties to

6   designate as confidential commercially sensitive documents that

7   the parties kept as confidential.

8        These Slack messages, I agree with you, this is not the

9   recipe for Coca-Cola in these messages but they're confidential --

10  from the company's perspective these are internal strategy

11  discussions, some from years ago, of course.  They're still

12  relevant in some respects to how they market open positions, how

13  they develop -- or how they position themselves with respect to

14  press, what their response is to -- what their response was and

15  strategy was with respect to obtaining domain names.  These are

16  from their perspective internal strategies, marketing issues.

17       They are -- they fall within the protective order's

18  meaning of what a party can designate as confidential.  We're not

19  saying that at trial we would have to close the Court, that these

20  could not be introduced as exhibits.  We're saying for purposes of

21  the summary judgment motion, these should be maintained as

22  confidential.

23       Just like the exhibits that we filed in support of our

24  motion for summary judgment that the defendant designated as

25  confidential, which are similarly 15-year-old internal

```
 1  communications that have no financial information on them that
 2  were designated by the other side as confidential.  And we said,
 3  fine, we will honor that designation.  We will file under seal.
 4  And we think that's appropriate because you view them as
 5  confidential.
 6          And Mr. Menhart, he agreed with that position and
 7  said -- and he agreed even with respect to the internal e-mails
 8  that were filed in his motion of our client, that those should be
 9  at least sealed until trial.  So I think -- it seems like the
10  parties agree that at least for purposes of this aspect of the
11  proceeding if the parties have designated something as
12  confidential, then it should be maintained as confidential.
13          What we didn't hear from the objection was that these
14  were produced months and months ago.  There was no issue raised
15  about the confidentiality at the time such that I need to show
16  these to my client or we need these otherwise to defend the case.
17  It was only for -- it was filed -- the challenge was raised right
18  before the motions for summary judgment.  They were included in
19  the motion for summary judgment.  The Court is not prejudiced in
20  ruling on the motion for summary judgment with these issues.
21          So I hear your Honor's concern that some of these
22  messages -- but, remember, these are the Slack messages that we
23  thought were irrelevant in the first place, that they really
24  didn't bare on critical issues here.  And what I think came
25  through for us from the response from the defendant was they
```

1  believe that these messages are embarrassing to my client for some

2  reason and that's the reason -- that's the only reason stated why

3  they should be publicly filed.  That's not sufficient of a reason.

4  They should remain under seal at least until trial at which point

5  the Court can consider what, if anything, needs to be under seal.

6          THE COURT:  Let me tell you -- you may be seated -- the

7  concern that I have.  And, you know, in all honesty, I'm not --

8  it's not a big deal to me about when they're unsealed.  And if the

9  case ends up being resolved through summary judgment, then they

10  would not have to have been necessarily unsealed.  Though if I did

11  that, I would probably unseal them in my final order just for this

12  reason:

13          The courts are often criticized and particularly in

14  connection with litigation between businesses of keeping from the

15  public what is happening in the courts.  That's a criticism that

16  we receive.  And there's a lot of criticism -- and we get

17  criticism from Congress that we overly seal documents and hide

18  them from the public.

19          A brief aside, I actually testified before Congress on

20  that issue and it was very uncomfortable, so the point has been

21  made with this judge.  So I'm very sensitive to what I'm allowing

22  to be placed under seal.

23          Let me say this to you:  I am going to unseal these.

24  I'm not locked into the timing.  I have access to them.  The

25  sealed documents are available to the Court, counsel have access

1    to them and so it's not being kept from anyone.  It is likely

2    that -- I don't mind holding off on the unsealing of these until

3    I've ruled on the motion for summary judgment, but I would likely

4    unseal them at that point.

5            If there's a document -- and as we go through these, I

6    will mention there are some documents that I look at.  And I

7    think -- I see your point here, this does contain sensitive

8    financial information or I think maybe -- I'm trying to remember

9    whose document it is.  I've looked at so many documents.  I think

10   this is a defense document that has payroll information about

11   individuals' payrolls.  Those are the kinds of things that to me

12   are legitimate.  These people aren't parties to litigation.  Their

13   personal finances don't need to be spread on the record of the

14   court.  So some of those things I probably would not unseal but

15   other matters I would.

16           In this packet of information I generally felt I would

17   likely unseal these with the exception of the last one because I

18   am not conversant in Spanish.  I have no idea what it says.  So I

19   would probably hold off on that unless and until someone advises

20   me that I should or should not.

21           MR. MENHART:  Yes, your Honor.  I'll just very briefly

22   identify that.  So it is Portuguese.  And they are --

23           THE COURT:  That's how bad it is.  I don't even know

24   what language it is.

25           MR. MENHART:  I promise you, your Honor, we are all

1  better at Portuguese now than we used to be at the beginning of

2  this case.

3         But I will tell you if you do translate that -- the only

4  thing I would say to you on that particular point is if you do

5  translate that, it's actually an instance of actual confusion

6  between a third-party journal as between my client and their

7  client.  So unfortunately I do think it is unfortunately quite

8  relevant.  Actual confusion is very important in cases like this.

9         So I would make that small little note to you if you're

10  considering it.  And I think that its higher document really

11  should be unsealed if it's going to be unsealed.

12         THE COURT:  Okay.  Well -- and let me say this.  Like I

13  said, for trial it would certainly be unsealed.

14         Let me say this:  If you wish me to consider this during

15  the motion for summary judgment, I need you to give me an English

16  translation.

17         MR. MENHART:  Not a problem.

18         THE COURT:  Okay.  So at this point I will say to you it

19  is my intention to ultimately unseal these documents.  I will

20  certainly be considering them for the motion for summary judgment.

21  But I will not unseal them today.  I will hold off on the

22  unsealing of those but would anticipate that they would ultimately

23  be.

24         The next was the motion at Docket 107, which is

25  plaintiff's motion to file under seal certain exhibits.  And of

1  these exhibits it's the reverse here, the plaintiff is seeking to

2  use a number of exhibits of the defendant, I think 11 exhibits

3  from the defendant, and one of its own as -- in support of its

4  motion for summary judgment.  There was no objection from the

5  defendant as to Exhibit AJ, which is the exhibit that the

6  plaintiff wished to use.  And I have reviewed that one and I

7  would -- it would be my intention to allow it to remain under

8  seal.

9          As to the defendants, the defendant's response was not

10 objecting to them being under seal but I actually have an

11 obligation to show me they should be under seal.  In looking at

12 those -- and, again, I told you I would tell you if I looked at --

13 S, T and U I could see you maybe having an argument for those

14 because they contain financial information or other matters that

15 may be more confidential.  The others I did not think were matters

16 that would need to be under seal.  What's good for one side is

17 good for the other.

18         I would say to you I will ultimately unseal those with

19 the exception of S, T and U once I've ruled on the motions for

20 summary judgment.  But I will give you an opportunity if you wish

21 to supplement your response and tell me why any of the others

22 should also remain under seal.  But absent that, I will unseal

23 except as to S, T and U.  So if you want me to look at any others,

24 if you would file just a supplemental brief within 14 days that

25 poses your arguments why those matters should be under seal, I

1  will take that under consideration.

2          MR. MENHART:  Your Honor, can I ask one very brief point

3  of clarification?

4          THE COURT:  Sure.

5          MR. MENHART:  I'm sorry, you're saying S, T and U?

6          THE COURT:  Yes.  S is a 22-page exhibit that is -- it

7  looks like a new employee packet and has all manner of information

8  in it.  It doesn't actually say that it is to be confidential.  It

9  says there will be matters within your employment that are

10  confidential.  So I'm not sure -- this looks like something that's

11  maybe given to every person that applies for a job or if you're

12  ultimately hired, so there may not be trappings of efforts to

13  maintain confidentiality that would normally be required for the

14  Court to allow it to be.  So that was Exhibit S.

15          Exhibit T is a payroll account ledger, which is what I

16  mentioned earlier.  It has payroll of the different employees and

17  so forth.

18          And U is a payroll ledger as well.

19          So those were the three that I had identified for those

20  reasons.  S, being the least strong just because I'm not sure it's

21  really a confidential document.  But the other two just because

22  the payroll records I felt it may be worth protecting the privacy

23  interest of those individuals named therein.

24          MR. MENHART:  Thank you for that clarification.

25          THE COURT:  The next one was Docket Number 115, which is

```
 1  plaintiff's motion to file under seal Exhibit A in support of its
 2  motion to exclude opinions of Brian Buss.  That's Mr. Buss's
 3  expert report is what it is.  And it contains --
 4            MR. MCLAUGHLIN:  Right.
 5            THE COURT:  -- a lot of financial information and so
 6  forth that we used in the calculations for damages I think by
 7  Mr. Buss.  As I said, I gave the spoiler alert earlier that I'm
 8  inclined -- that's the type of information that I think we do
 9  typically afford protection to the parties on.  So it will be my
10  inclination to keep that under seal just as we will do with your
11  supplemental report when it's submitted.  And, again, obviously I
12  will be considering that for purposes of the motion.  But I will
13  not unseal it after the motion.  I realize it may be used at trial
14  and we can deal with that at that time.
15            And that raises something I wanted to clarify,
16  Mr. Menhart, for you because you had objected to one of their
17  arguments about permanently sealing.  And for me that's more a
18  term of art just in terms of we're going to allow it to remain
19  sealed indefinitely through the trial.  It's not necessarily as
20  permanent as it sounds because I know your concern was, Hey, I
21  want to use this at trial.  And that does not mean that you can't
22  use it at trial.  It just means that we're on the docket not going
23  to open it up at that point.  By allowing it to remain under seal
24  does not prohibit you from using these exhibits, nor plaintiff
25  from using these exhibits at trial if they're relevant and
```

 1 | admissible.  So I will grant Plaintiff's 115.

 2 |         The next issues came from the e-mail exchange with

 3 | Ms. Kemp on October 25.  There were a couple of issues raised in

 4 | that.  One we've already addressed.  It encapsulated defendant's

 5 | response to an earlier motion, so I won't revisit that.  But the

 6 | plaintiff had raised a concern about a document dump -- that

 7 | there's been a number of documents apparently served on the

 8 | defendant on the eve of summary judgment deadline.  I didn't

 9 | discern precisely what the documents were or the nature of the

10 | documents.

11 |         So let me begin by hearing from plaintiff in terms of

12 | the nature of these documents and your concern about the timing of

13 | your receipt of them.

14 |         MR. MCLAUGHLIN:  Sure, your Honor.

15 |         So two days before our summary judgment motions were

16 | filed, we received a production, although it was not Bates

17 | labeled, we just received an e-mail with seven e-mails attached to

18 | it.  These e-mails were from September 2021 up through a couple of

19 | weeks prior but September, March of '22, August '22, August 15th

20 | of '22, September of '22.  They were mostly in Portuguese.  There

21 | was a one-line e-mail from some unknown party to Mr. Hudson's

22 | e-mail address, the defendant.  That's all we got.

23 |         They feature in the defendant's summary judgment motion

24 | as in their view evidence of actual confusion because they view

25 | them as customers of our client that were e-mailing trying to

1  reach the plaintiff and sent the e-mail to Mr. Hudson.

2          We had a meet and confer with defendant's counsel about

3  why these were sat on for -- especially the ones from over a year

4  prior before producing.  There was no reason given.  And so we

5  don't believe that the Court should consider them for purposes of

6  the motion for summary judgment.

7          They should have been produced.  The latest one was

8  October 5th, 10 days before.  Arguably, you know, that one they

9  just got.  They had an obligation to supplement, they should have

10 supplemented that.  But any of the prior ones, they should have

11 been turned over after they were received, not a year later, not

12 five months later.

13         Your Honor warned both parties at our last hearing that

14 you don't tolerate surprises.  Discovery means discovery, it gets

15 turned over.  And for the defendant to sit on these and not turn

16 them over, give no explanation, none of these individuals were

17 disclosed as relevant or potentially relevant individuals, we

18 would have conducted discovery likely with respect to these

19 individuals, as well as Mr. Hudson and his interactions with these

20 individuals, and we're prejudiced at this point.

21         Now, I know the other request from Mr. Menhart is to

22 reopen discovery on these issues.  And we object to that, too.

23 Discovery is over, it's long been over.  And this coincidental

24 e-mails that came in a couple weeks before summary judgment, you

25 know, I don't think it makes sense for us to waste time figuring

1  out the genesis of that.  I think it's too late.  I think the

2  Court should stick with the discovery that was turned over during

3  the period of discovery.

4        THE COURT:  Let me ask you this and it -- I'm not being

5  factitious when I ask it, but does it really matter?  To me both

6  sides say they're confusing marks.  I mean, I'm not sure there's

7  much debate that the public is likely to confuse these marks if

8  they're confusingly similar, et cetera.  And I'm not sure what

9  this even really even adds to the argument.  I know there's some

10 nuance to particularly the argument you offered with regard to it,

11 there's some nuance to that.

12       But the bottom line is it's a finding I've got to make.

13 And if it's more complicated than I think, you guys need to tell

14 me because I thought that was one piece of this I could almost

15 punt on, it's just so clearly confusing.  And the fact that these

16 e-mails support that, I don't know that it adds a great deal to

17 the argument to me, but it may matter to you in the approach

18 you've taken.  I know both sides took a little different approach.

19       I did read in advance your motion for summary judgment

20 just because I wanted to have a sense of what's relevant and

21 what's not relevant to the case.  And I will say to you I really

22 look forward to the responses because I think they're both great

23 motions for summary judgment.  It's a challenge now who wins.

24 This is really getting interesting from my end.  So those

25 responses are really important, guys, because both of you did a

1   great job on your initial motions.

2          MR. MCLAUGHLIN:  So I think it matters -- I would say on

3   the one hand I agree with your Honor, it doesn't matter.  Our

4   position with respect to the defendant's claims for trademark

5   protection are -- as we indicate in our motion, the Court doesn't

6   even need to reach likelihood of confusion under the analysis that

7   we set forth.  Mr. Hudson cannot claim protection under common law

8   for his use of Nubank to do -- to establish Nubanks.  It's a

9   generic use.  So the Court doesn't even need to get to likelihood

10  of confusion.  In our view they lose before you even get there.

11  So to the extent these e-mails are intended to support actual --

12  or likelihood of confusion on his claims, it doesn't matter.

13          With respect to our affirmative claims for trademark

14  infringement, yes, we've already produced evidence of actual

15  confusion.  You don't need much.  Arguably this is just additional

16  of that.  But it doesn't change.

17          So I agree ultimately with your Honor, it doesn't matter

18  much, it's just the dump on the eve of summary judgment and using

19  that to try to avoid summary judgment is the concern that we have.

20          THE COURT:  And I think where -- in fairness to you,

21  where this may become more important it seems to me is if both

22  motions for summary judgment are denied and we go to trial and

23  they want to present one of these witnesses and you've got this

24  put on you the day before summary judgment, at that point, no,

25  they didn't comply with discovery.  They should have been produced

1  earlier.  You can't produce these folks at trial to testify to

2  this.  That's where to me this becomes a legitimate issue and more

3  problematic at that point than it is at the motion for summary

4  judgment stage just because I don't see the confusion issue as the

5  big one.  But I understand what you're saying.

6          MR. MCLAUGHLIN:  I agree.  And that's why we raised it.

7  We have the same concerns, so we wanted to raise it as soon as

8  they were sent.

9          THE COURT:  I understand.

10          Mr. Menhart.

11          MR. MENHART:  Yes.  Quite a bit to unpack there but let

12  me do my best.

13          So first thing as to timing --

14          THE COURT:  First is you're really happy that I liked

15  both motions for summary judgment but would prefer that I like

16  your's better.  Okay.

17          MR. MENHART:  We always appreciate compliments.  And I'm

18  sure plaintiff's counsel would agree with that.

19          So first thing on the timing.  These are ongoing

20  instances of actual confusion.  They're ongoing.  They happen

21  every three to four weeks.  Don't quote me on that exact number.

22  But it's ongoing.

23          So, look, I'll say this in open court, if we want to

24  have a stipulation right now that there's actual confusion in the

25  marketplace, we're perfectly comfortable with that, period.  We

```
 1  can just leave it at that.  They haven't said that.  You know,
 2  talking about the motions for summary judgment, they kind of
 3  ignored the likelihood of confusion analysis which was
 4  interesting.  But, you know, if there's a stipulation that there's
 5  actual confusion between these marks, defendant will agree to that
 6  and it's not a problem.  I'll put that on the record.
 7          The second thing is that these -- so the question then
 8  becomes about the discovery.  Well, we couldn't have done this
 9  discovery during the factual discovery period because these are
10  ongoing instances of actual confusion.
11          So, you know -- and I think plaintiff's counsel, I think
12  there's one thing that they said that's interesting, which is,
13  Hey, look, they got one from 2021, something like that.  I think
14  we thought we produced that in 2021.  We didn't so we threw it in
15  there.  But the vast majority of these, I think it was something
16  like nine of ten or something were after the factual discovery
17  period had closed.  So they were ongoing.  And most of them were
18  quite recent.  That's the first thing on the timing.
19          The second thing is if there is a stipulation that
20  there's actual confusion here, then I would basically agree, we
21  don't need additional discovery as to this actual confusion.  But
22  if there's some factual question about actual confusion in this
23  case, then unfortunately we are not in a position where we can set
24  aside instances of actual confusion, which is truly the fulcrum on
25  which these cases often are decided.
```

1          So unfortunately I don't know how to answer this

2   question for the Court because I don't know if there's a

3   stipulation as to actual confusion.  If there is, we're open to

4   that.  Potentially we can meet and confer on that and get back to

5   the Court and maybe talk about this some other time.  But at this

6   point I just don't know that we can say, Hey, look, we're just

7   going to throw that stuff away because it's truly relevant

8   evidence.  And if there is some question about actual confusion,

9   I think we do need to have a conversation about that.

10          So I realize I'm not answering the question directly,

11   but I don't know that I can if there's any real question about

12   whether there's an actual confusion question, which it seems at

13   this point that there is based on what I'm seeing in the

14   documents.

15          THE COURT:  Mr. McLaughlin.

16          MR. MCLAUGHLIN:  Yes.  I don't think we're prepared to

17   stipulate that -- because it's a different question.  Their burden

18   on their affirmative claim is to prove and to meet their burden

19   of actual confusion.  They did not produce any evidence of that

20   during discovery.  And so I do think it's an issue that we would

21   dispute with respect to their affirmative claims.  And I think

22   that is the reason that -- at the time that they filed the

23   lawsuit, what evidence did they have of any actual confusion?

24   None.  What did they have during discovery?  None.

25          So I think it is -- to say, well, it all just happened

1   in the last week, that's when all the -- or in the last two

2   months, that's when all of the actual confusion exists, again I

3   think this is just another instance of ignoring -- and all we got

4   were these -- there was no -- we didn't have the opportunity, as

5   your Honor pointed out, to depose Mr. Hudson about the

6   communication -- the September 2021 communication that was not

7   produced previously.

8           Had these been produced in March, April, at the time

9   that the Court was still ruling on the parties' outstanding

10  discovery disputes, we could have asked for relief at that point.

11  But at this point for purposes -- I don't want to repeat myself.

12  For purposes of summary judgment I think it's inappropriate.  And

13  I think -- right...

14          And to your Honor's point, if it's not going to be

15  admissible at trial because of the fact that it was disclosed too

16  late and we had no opportunity to depose these witnesses, it

17  shouldn't be considered for summary judgment.

18          THE COURT:  None of your claims will require you to

19  prove likelihood of confusion?

20          MR. MCLAUGHLIN:  Our affirmative claim will, but we have

21  produced and presented evidence of that confusion.  Not these

22  documents but we have produced separate evidence of that in the

23  record.

24          THE COURT:  Which leads me to the ultimate point.  You

25  would expect to prove there's confusion.  If there's a stipulation

1   as to that, you wouldn't even have to prove it.

2          MR. MCLAUGHLIN:  Right, but I -- the confusion --

3          THE COURT:  Does it matter whether it's confused from

4   one side to the other?  I'm not sure it really does.  The issue

5   there is is there confusion -- is the public likely to be confused

6   by it is my understanding of what that element may be.  I may be

7   wrong but that's my understanding of what it would be.  Regardless

8   of whether it was someone looking for you or looking for them, if

9   they're confused, they're confused.

10         MR. MCLAUGHLIN:  I think that's generally right but

11  still the burden doesn't change in terms of the parties'

12  obligations.  Ultimately might we down the road want to stipulate

13  to that?  Perhaps.  But I think at this point we're not prepared

14  to stipulate that there's actual confusion.

15         THE COURT:  Okay.  That's fair.

16         MR. MENHART:  Your Honor, I hate to bog us down on this

17  issue, but please let me address one thing here.

18         If they're not prepared to stipulate that there's actual

19  confusion, then the harsh reality -- I'll say this as politely as

20  I can -- we have to treat these e-mails seriously.  These are

21  instances of actual confusion.  By the way, and this is the second

22  part of the e-mail that we're talking about right now, we have --

23  I've outright said I'm more than willing to do limited discovery

24  on this because our strong suspicion is that these are Nu

25  Pagamentos customers.  So they are going to have records of these

1  customers either by name or e-mail address.  And, look, maybe it

2  won't be 100 percent accurate, right?  Maybe there's someone else

3  that got confused about something else somewhere.  But we're going

4  to see a certain percentage of customers that they can identify as

5  their own customers.  And we don't have to do depositions, we

6  don't have to do anything.  We can send them a document that says,

7  Please give us information about the following people.  They can

8  check their bank records.  It's going to take them a matter of

9  minutes to look that through, figure out if these are actual

10 customers.  And that's absolutely unequivocally relevant to this

11 case.

12        So, again, you know -- again, being as polite as I can

13 be here, we're happy to stipulate to confusion.  And I do agree

14 with your Honor, you're exactly right, if there's confusion in the

15 marketplace, it doesn't matter where it goes.  It doesn't.  And

16 that's pretty clear case law quite frankly.

17        So from our perspective, if there's stipulation, we will

18 drop this issue, period.  If there's no stipulation, unfortunately

19 we must continue -- my request stands, which is that we think we

20 can do very limited discovery on stuff that happened well after

21 the discovery period closed and the plaintiff could figure this

22 out in a matter of minutes.  It would be an extraordinarily low

23 burden.

24        So the request stands as of this minute.  I don't know

25 if the Court wants us to talk about it later amongst ourselves.

1  I'm open to what the Court thinks is best on this.  But I just
2  want to make it perfectly clear on the record that we are willing
3  to give it up if there's stipulation.  We cannot unfortunately
4  give it up if there is not.
5          THE COURT:  I'm thinking out loud of alternatives that
6  you have.  And is not one of your alternatives, at least as to
7  those persons who -- from whom you heard after the discovery had
8  closed, you have their e-mail addresses because they e-mailed
9  you --
10          MR. MENHART:  Correct.
11          THE COURT:  -- to be able to reach out to them and
12  contact them and see what their information is and then add them
13  as a witness at trial if -- as there's no way you could have
14  disclosed them earlier, you didn't know about them, add them as a
15  witness for purposes of trial and be able to use them in that way?
16  And that's a typical kind of -- we haven't even got a pretrial
17  order yet, so it would not be after the pretrial order.  The only
18  bad part for you would be it was after discovery.  But if you
19  could show you didn't know about them before the end of discovery,
20  it would be later-learned information for which you would not be
21  at fault and those parties could be added, it seems to me, to your
22  witness list at that point if you needed to do that.
23          I'm not ruling one way or the other on this, I'm just
24  thinking out loud of the impact of my ruling in terms of the
25  ability of the parties to present their cases, so...

```
 1              MR. MENHART:  Right.  So let me very briefly address
 2    that.
 3              So I agree with everything you just said with the caveat
 4    being that the concern for us is that now all of a sudden we've
 5    got potential depositions, right?  We've got translators.  We've
 6    got a -- and so from my perspective, I'm trying to be a little bit
 7    more efficient here.  And I understand what the Court is saying.
 8    And, of course, you're absolutely right.  But I think from our
 9    perspective we were trying to do something that we thought would
10    be a very low burden.  Hey, look, do you have records of these
11    guys?  If you do, I think that would be relatively useful
12    information.
13              And, look, at the end of the day these are third-party
14    witnesses, right?  So, you know, we have to reopen discovery.  We
15    have third-party witnesses.  We've got depositions.  Now we're
16    talking about months and months and months of stuff that in my
17    opinion could be effectively solved with a record request.
18              So that's why we've made that suggestion because we
19    thought bluntly it would be easier for the plaintiff.
20              THE COURT:  That's everything I had on my list.  Did I
21    miss something?  Anything further from the plaintiff?
22              MR. ANDREWS:  I don't believe so, your Honor.
23              THE COURT:  From the defendant?
24              MR. MENHART:  Your Honor, one very brief request.
25              My client has asked about a potential trial date.  I did
```

1   reach out to opposing counsel -- plaintiff's counsel on -- about

2   two weeks ago.  We suggested a potential trial date of late

3   January, potentially early February.

4           We believe it might make sense to set a trial date in

5   this matter sooner rather than later.  I do anticipate that

6   there's probably going to be objections to a wide variety of

7   dates, so we would like to get a trial date on the calendar if the

8   Court is inclined to do so.  It's a respectful request, but that

9   is something that my client would like me to address with you,

10  please.

11          THE COURT:  Sure.  It's not going to be by late January

12  because there's too many folks ahead of you to get you in then.

13  So the earliest it would be would be February, let me say that to

14  you.

15          Two things.  There are other cases that need to be tried

16  before this case that are older on the docket in a position where

17  they're past summary judgment.  The other is we've got to get past

18  summary judgment.  We're not even to response yet on summary

19  judgment.  So we have to get responses, replies.  And we've got to

20  draft an order.

21          So I don't see us getting the order out on summary

22  judgment much before early January.  Then you've got 30 days to

23  file your proposed pretrial order.  And then we'll set a pretrial

24  hearing.  And we can set the pretrial hearing before you submit

25  the pretrial order because we will definitely have a pretrial

```
 1  hearing in this case.  So let's be realistic.  We're probably
 2  looking more like March.
 3          We are in the process now of setting our trial calendars
 4  for early next year.  This will be one of the cases that would be
 5  included in that.  Anticipating because of the nature of the
 6  parties that you're going to have people with a lot of travel and
 7  so forth, we're happy to specially set it so that it gives you
 8  gentlemen protection on other calendars but also would allow your
 9  witnesses and clients to lock in their travel needs for being able
10  to be here.
11          I am going to order even though -- I will issue a
12  written order coming out today to memorialize what's transpired
13  here and to lock down a couple of lose ends that we have.  I'll
14  take a look at supplemental expert report and so forth, and I'll
15  issue a written order very quickly.
16          And I'll lift the stay on motion for summary judgment so
17  we can get those moving.  The responses will be due in 21 days,
18  which I think would be December the 7th.  And then file the
19  replies thereafter.  And the motion to exclude opinions and
20  testimony continues on the briefing course that's already set in
21  place for that.
22          And, as I said, we will be moving on those fairly
23  quickly because I do feel this case has been around long enough
24  that we need to get it on to trial, and I know that's what the
25  parties want.
```

1          I know you guys get tired of hearing me say this but if

2  ever there was a case that needs to be settled, this is it.  I

3  mean, it's just bizarre to me that we're going to try this case.

4  This is going to be an expensive case to try.  All I can figure is

5  that we've got deep pockets on both sides of this case because I

6  can't imagine what they're spending to litigate what to me is not

7  as huge an issue as each side is trying to make it.  And I wish

8  they were here because I would love to say it to them personally.

9          There's such an easy way out on this thing.  I mean,

10  I've seen the kind of numbers that the defendants ask for.  That's

11  one of the benefits of getting to read your personal e-mails in

12  terms of the numbers being thrown out, which in my view are

13  absurd, the demands that are being made.

14          At the same time I think you guys have an uphill battle

15  here.  I mean, you do.  Because this guy, you admit it, he used

16  this name back there somewhere, sometime.  The question is going

17  to be did he abandon it?  How good is your case there?  And you

18  are going to serve that up to six people from Northeast Georgia to

19  decide for you.  Good luck.

20          I mean, I'm serious.  This is a real crap shoot on this

21  one because it could go either way.  And I say that having read

22  your motions for summary judgment.  It may go out on summary

23  judgment in all candor, so maybe you want to wait to see what

24  happens with that before you push settlement.  But that's all the

25  more reason to settle before you get to that because it's going to

1  be a lot harder to settle if one of you thinks you're the winner

2  at that point.

3         But this case is not one of those cases where -- and

4  both of them need to continue to operate heavily in the market

5  because it appears that the defendant has -- he said he'd retired.

6  I mean, whether he's still doing and how much he's doing, it

7  doesn't look like from anything I've seen submitted in the record

8  so far that he's out there hustling and really trying to work a

9  booming business.

10         He's got a mark that he's got arguably some right in.

11  He wants to benefit from that, so be it.  This crowd wants to run

12  with the name they've been using for a while and be able to

13  proceed with that.  But the reality is you guys can proceed

14  without it if you had to.  I mean, you looked at other names.  And

15  you're looking at different ways of working that name.  So, I

16  mean, there are alternatives out there for both of you.  So why we

17  go down this road, I don't know.

18         But, hey, I've got to be doing something.  I'm happy to

19  be trying your case.  And I'll be here to do it.  But I hope you

20  just, you know, have that wake-up call with your clients and make

21  sure -- and I know you will.  And I know you'll make sure they

22  understand the risk here and the old risk reward analysis.  But to

23  me, I really wish you guys could settle this case because I think

24  that there's a middle ground out there somewhere.  I don't know

25  where it is.  I don't know the numbers but there's got to be a

1  number out there somewhere that could get us over this hump.  But

2  the number may be so big, it's cheaper to try it.  I don't know.

3       From the number I saw, it's cheaper to try it.  But I

4  don't know.  I just encourage you to evaluate it with your

5  clients.  And if you want -- I mean, if you wanted to have a

6  mediation, I'm happy -- I'm not going to delay for a mediation,

7  though, let me say that to you because I know everybody wants to

8  bring this to an end.  But I would be happy to send you to a

9  magistrate judge.  Our magistrate judges -- it doesn't cost you a

10  dime -- are great mediators.  I'm happy to send you to a

11  magistrate judge for mediation if you want to take a crack at

12  that, but I'm not going to order you to.  And the reason I'm not

13  is because you have clients far away and all this and they need to

14  be at the table.

15       MR. MCLAUGHLIN:  We did mediate before Judge Anand.

16       THE COURT:  Sorry.  I forgot.

17       MR. MCLAUGHLIN:  You referred us.  It was a while ago.

18       THE COURT:  Oh, I remember that because we delayed

19  everything while he was doing the mediation.

20       MR. MCLAUGHLIN:  Right.

21       THE COURT:  Well, if you want to go see Judge Anand

22  again, I'll guarantee he will talk to you again.  So that's there.

23       Anyway, thanks for coming up today.  Hopefully this is

24  helpful and helps us keep moving.  And if we've got to have a

25  trial, we'll get on it and we'll get you on a trial calendar.  And

1    as I said, we'll get out an order memorializing today's events so

2    that that's on the record.  Ms. Meyne will give you her address to

3    be able to send that to us.

4              Thank you, gentlemen.  Have a good day.  We're

5    adjourned.

6              (PROCEEDINGS REPORTED WERE CONCLUDED AT 10:28 A.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      C E R T I F I C A T E

2

3  UNITED STATES DISTRICT COURT

4  NORTHERN DISTRICT OF GEORGIA

5

6      I do hereby certify that the foregoing pages are a true and

7  correct transcript of the proceedings taken down by me in the case

8  aforesaid.

9      This the 22nd of November, 2022.

10

11

12

13

14      _____

15                  PENNY PRITTY COUDRIET, RMR, CRR
                    OFFICIAL COURT REPORTER
16

17

18

19

20

21

22

23

24

25