IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| NU PAGAMENTOS S.A. - INSTITUICAO DE PAGAMENTO<br><br>v.<br><br>JERRIE KAY HULSEY, EXECUTRIX OF THE ESTATE OF GEORGE DANIEL HUDSON | Case No. 2:21-cv-00069-RWS |

## DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant hereby moves for Reconsideration of the Court's Order of February 22, 2023. *See* Dkt. #142.

### I. RELEVANT FACTUAL AND PROCURAL BACKGROUND

After participating in an extended factual discovery period, which concluded on December 12, 2021, the parties filed dueling motions for summary judgment on October 22nd, 2022. *See e.g.* Dkt #100, #103. The court issued a written Order on February 22nd, 2023, resolving the Motions for Summary Judgment. *See* Dkt. #142. The instant matter was subsequently procedurally stayed on two separate occasions, for different reasons that are reflected in the record. *See* Dkt. #143, #170. The two separate stays collectively totaled approximately nine (9) months of time throughout 2023. This Motion follows.

1

## II. LEGAL STANDARD

"Every order short of a final decree is subject to reopening at the discretion of the district judge." *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (*citing* Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983); *see also* Fed. R. Civ. P. 54(b)).

The Eleventh Circuit has explained that "we see no reason to apply a different standard when the party seeks reconsideration of a non-final order" than when the party seeks reconsideration of a final judgment." *Maldonado v. Snead*, 168 F. App'x 373, 387 (11th Cir. 2006) (referring to Rule 54 and Rule 60) (*citing Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993) (citations omitted).

While not immediately at issue, Rule 60 notes that a "reasonable time" for motions under that Rule is "no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c)(1). This instant Motion,[1] filed on February 21, 2024, is consistent with that time frame given the two recent procedural stays.

## III. ARGUMENT

Unfortunately, the Court's February 22nd, 2023, Order contained numerous errors that are inconsistent with Eleventh Circuit precedent and guidance.

---

[1] In the interest of transparency, this text of this Motion relies, in part, on the Defendant's prior Motion to Stay. The Court procedurally denied as "moot" that prior motion, in a two-page order. *See* Dkt. #161.

**A. Plaintiff's Judicial Admissions**

Defendant previously explained, in detail, the clear Eleventh Circuit law regarding judicial admissions made in pleadings. *See* Dkt. #127 at ECF 8-13.

Defendant, in his Counterclaims, stated that "11. The name Nubank is a "fanciful" trademark, a completely new word, and accordingly entitled to the strongest possible trademark protection under United States law." *See* Dkt. #23, p11 at ¶ 11.

In response, Plaintiff affirmatively stated in its pleadings, in a corresponding Paragraph "11" that "the mark NUBANK is inherently distinctive." *See* Dkt. #24 at ¶ 11. Moreover, Plaintiff did not deny, in any respect, any of the allegations in Hudson's numbered allegation. Plaintiff made the *identical* admission again almost exactly six months later. *See* Dkt. #66. No additional amendments were ever made or sought by Plaintiff.

1. Federal Rule of Civil Procedure 8

First and foremost, the Federal Rules clearly addresses such situations, stating:

> (6) Effect of Failing to Deny. An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.

*See* Fed. R. Civ. P. Rule 8(b)(6). Not only did Plaintiff fail to deny[2] Hudson's allegation, but Plaintiff affirmatively stated its position that "the mark NUBANK is inherently distinctive." *See* Dkt. #24 at ¶ 11, Dkt. #66. No reasonable reader would conclude that Plaintiff's chosen language "failed to deny" Hudson's allegations.

Plaintiff, in argument that completely ignored the binding Eleventh Circuit law, did nothing more than refer to this issue as a "red herring" and self-servingly offered alternative language that was a *clear* departure from Plaintiff's prior admissions. *See* Dkt. #132 at ECF 21.

The Court,[3] improperly ignoring the Plaintiff's admissions, inaccurately stated that "Plaintiff did not admit that Hudson's use of 'Nubank' is distinctive," and did not address *any* of the substantial case law cited by Defendant on this issue. *See* Dkt. #142 at 15.

Consistent with the Federal Rules, such judicially admitted facts are "facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) (*quoting Hill v. Federal Trade Comm'n*, 124 F.2d 104,

---

[2] Nu Pagamentos stated general denials throughout its Answer, including in Paragraphs 10 and 12.

[3] The Court's rejection of the Plaintiff's admissions was particularly notable because the Court did correctly recognize admissions in pleadings in other parts of its Order. *See* Dkt. #142 at 25 ("the Court will treat this element as admitted by both parties").

106 (5th Cir. 1941)). "A party is bound by the admissions in his pleadings." *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983). Moreover, "parties may admit facts that determine legal issues. *Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*, 837 F. App'x 141, 146 (4th Cir. 2020) (*citing Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004). Defendant previously addressed these issues in detail in his written briefs.[4] *See* Dkt. #127 at ECF 8-13.

The law in the Eleventh Circuit is particularly well developed on this issue. "A party cannot avoid the consequences of the acts or omissions of his voluntarily selected 'lawyer-agent.'" *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 718-19 (11th Cir. 2011) (*citing Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962)).

By way of example, in one matter, a court concluded that "based on [a litigant's] factual averments, set forth in her summary-judgment briefing, the Court and the Parents alike are "entitled to rely on" her representations of sleeping during her shifts "and to believe, given that concession, that no further evidence on the issue [is] needed." *Blanco v. Samuel*, Civil Action No. 21-24023-Civ-Scola, 2022

---

[4] Defendant additionally incorporates by reference the prior filings that are already of record by way of the very comprehensive briefing on the respective Motions for Summary Judgment.

U.S. Dist. LEXIS 183167, at *11 (S.D. Fla. Oct. 6, 2022) (*citing I.L. v. Alabama*, 739 F.3d 1273, 1284 (11th Cir. 2014) (*Blanco* reversed in part on other grounds).

In another matter, a court concluded that parties' "statement in their complaint that the parties executed the contested lease (as well as the admission in their answer to the counterclaim that they 'entered into' the signed lease) constitute a judicial admission that the lease was a signed, legally enforceable document . . . Accordingly, at the Rule 56 stage, Plaintiffs are judicially estopped from controverting the formation, entry, and execution of the lease." *Papa Air LLC v. Cal-Mid Props. LP*, No. 2:19-CV-01713-RDP, 2022 U.S. Dist. LEXIS 45648, at *13-14 (N.D. Ala. Mar. 14, 2022).

In another matter, a court correctly concluded that a party "may not avoid [a] factual admission simply by filing a motion for summary judgment asserting a position inconsistent with its own prior admission." *Cortina v. F.A.D. Detective & Sec. Servs.*, No. 11-20732-CIV, 2011 U.S. Dist. LEXIS 138286, at *8 (S.D. Fla. Dec. 1, 2011). The *Cortina* matter is particularly applicable to the present case, where Nu Pagamentos attempted a similar strategy.

In yet another matter, a court concluded that "because these admissions are binding on Defendants, their efforts to minimize them fall flat." *Sims v. Event Operations Grp., Inc.*, No. 2:17-cv-01489-JHE, 2019 U.S. Dist. LEXIS 46899, at *18-19 (N.D. Ala. Mar. 21, 2019).

In sum, the Court's treatments of this issue in its Order were contrary to substantial Eleventh Circuit case law that Hudson comprehensively cited in his prior brief. For the Court to relieve Plaintiff of its binding judicial admissions is clear contradiction of Eleventh Circuit law.

Hudson was *extremely prejudiced* by the Court's treatment of this issue. The error should be corrected by holding Plaintiff to its judicial admission, as the law requires.

**B. The Court Erred When it Reached the Question of Distinctiveness and Further Erred by Finding Nubank "Descriptive" as a Matter of Law**

First, as explained above, it was an error for the Court to even reach the factual question of inherent distinctiveness, given the Plaintiff's binding admissions on the issue of distinctiveness.

However, the Court then improperly determined, *as a matter of law*, that "Hudson's use of 'Nubank' was not inherently distinctive." *See* Dkt. #142 at 11. The law in the Eleventh Circuit is clear that the question of whether a trademark is distinctive "is a question of fact." *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007). Defendant set forth the law on this issue on multiple occasions in his legal briefs. *See* Dkt. #127 at ECF 9, 13.

The Eleventh Circuit has explicitly explained that "common, ordinary words can be combined in a novel or unique way and thereby achieve a degree of

protection denied to the words when used separately." *Vision Center, v. Opticks, Inc.*, 596 F.2d 111, 117 (5th Cir. 1979). Not only is "Nubank" a novel combination, but one of the words is not an English word, at all, and is accordingly not "common" or "ordinary."

### 1. The Imagination Test

The Eleventh Circuit has explained that "two legal tests—we'll call them the 'imagination' test and the 'third-party-use' test—work in tandem to distinguish suggestive from descriptive marks." *Engineered Tax Servs. v. Scarpello Consulting, Inc.*, 958 F.3d 1323, 1329 (11th Cir. 2020).[5]

The imagination test asks if "the customer who observes the term can readily perceive the nature of [a party's] services, without having to exercise his imagination." *Engineered Tax Servs. v. Scarpello Consulting, Inc.*, 958 F.3d 1323, 1329 (11th Cir. 2020) (citing *Investacorp* at 1524). The Court's analysis effectively concludes that the word "Nubank" is obviously a reference to the "creation of new banks," (Dkt. #142 at 24) and that no consumer would have to "exercise his imagination" if seeing "Nubank" without any context.

The Eleventh Circuit has rejected analysis very similar to that undertaken by the Court in this instance. First, this Court "focused too narrowly on the individual

---

[5] The District Court involved in *Engineered Tax Servs.* was reversed and remanded for improperly granting summary judgment on a distinctiveness issue.

meanings of individual words . . . to the exclusion of the mark as a whole." *Engineered Tax Servs.* at 1329. This Court concluded that a consumer would obviously (a) see the term (b) immediately translate the "nu" to mean "new," (c) identify "bank" as a separate word, (d) and only conclude, *without any imagination*, that the business was a consulting service that *only* created "new banks."

This Court also "considered only one sense of the word '[nu]' to the exclusion of other relevant meanings" in contradiction with Eleventh Circuit guidance. *Id.* In this case, "nu" could be interpreted as the 13th letter of the Greek Alphabet, an updated or modern version of something, or an "interjection" for "well? so? so what?" *See* NU Definition and Usage Examples, available at https://www.dictionary.com/browse/nu (last visited February 18, 2023). Indeed, the Court itself recognized a definition of "nu" other than "new" when it concluded that American consumers should instead be expected to imagine that "nu" was the Portuguese meaning of the word. *See* Dkt. #142 at 24 n 6.

Accordingly, "a reasonable jury could conclude that potential customers would need to make at least some imaginative leap to grasp that the mark communicates both attributes. That leap is sufficient to render the mark suggestive, and thus inherently distinctive." *Engineered Tax Servs*. at 1333.

2. Third Party Usage

"Alongside the 'imagination' test, courts considering whether a mark is truly suggestive—or instead, merely descriptive—ask 'whether competitors would be likely to need the terms used in the trademark in describing their products.'" *Engineered Tax Servs.* at 1331 (11th Cir. 2020) (*Vision Ctr.*, 596 F.2d at 116 (*quoting Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 379 (7th Cir. 1976)); *see also Investacorp*,[6] 931 F.2d at 1523 ("to determine whether a term is descriptive, third-party usage by competitors is probative.")

This Court, in its Order, relied upon *Investacorp*, yet made no mention of the fact that there was no evidence of *any* party using Nubank, other than Hudson, before the Plaintiff was formed in Brazil in 2013. Moreover, there was no other use of "Nubank" in the United States before the Plaintiff's purported entry in 2018. Curiously, the Court engages in this third-party analysis only for the benefit of Plaintiff*, but completely ignores it* when it comes to Defendant's earlier and longer use. *See* Dkt. #142 at 26. Moreover, the Court itself admits that there is "no evidence of third parties using the mark for other purposes." *Id.* That conclusion would necessarily also apply to Hudson, from approximately 1979 to 2018, before Plaintiff first allegedly entered the United States marketplace.

---

[6] This case, among others, was addressed in detail in Defendant's prior filings.

Similar to *Engineered Tax Servs.* no party in the instant case offered "a single example in which the entire [word] '[nubank]' is used unambiguously to refer to a product or service in [either party's] main line of business." *Engineered Tax Servs.* at 1332. "Moreover, none of the evidence of third-party use here would require a reasonable jury to conclude that . . . competitors actually 'need' to use the mark to describe their own services." *Id.* at 1333. This Court's failure to engage in the analysis required by the Eleventh Circuit constitutes an error that should now be corrected.

### C. The Court's Secondary Meaning Analysis Was Erroneous Because it Applied Inaccurate Law, Resolved a Factual Issue as a Matter of Law, Admitted Plaintiff's Objectionable Evidence and Largely Ignored Defendant's Evidence

First and foremost, as discussed above, the Plaintiff's admissions that "the mark NUBANK is inherently distinctive" should have precluded the Court from even reaching this issue. Second, the Court should not have reached a question of "secondary meaning" because the mark Nubank is not "descriptive" as a matter of law and would necessarily require a factual determination by a jury.

Setting those errors aside, the Court's secondary meaning analysis was erroneous. Initially, and critically, the Court ignored the Eleventh Circuit standard for a *prima facie* demonstration of secondary meaning.

11

1. Hudson's *Prima Facie* Showing of Secondary Meaning

The Eleventh Circuit has explained that "a proprietor can make a *prima facie* showing of 'secondary meaning' by showing that the name has been used in connection with the proprietor's goods or service continuously and substantially exclusively for five years." *Welding Servs. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007) (*citing* 15 U.S.C. § 1052(f)). This Court itself cited to *Welding Servs.* in its Order, but confusingly fails to note the *prima facie* secondary meaning standard explicitly explained by *Welding Servs,* or credit Hudson with the same. *See* Dkt. #142 at 17.

Hudson absolutely meets this standard. The record reflects that Hudson has used "Nubank" since around 1978. *See* Dkt. #100-1 at 1, ¶ 1. It also reflects that Hudson "has used the Nubank name continuously, unabated since 1978." *Id.* at ¶ 2. The factual record is rife with evidence of Hudson's use of NUBANK for over forty (40) years. *See generally* Dkt. #100-1.

Given the foregoing, it was reversible error for the Court to conclude, as a matter of law, that "'Nubank' does not have secondary meaning as applied to Hudson." *See* Dkt. #142 at 17. To the contrary, the Court should have concluded

that Hudson *did* establish a *prima facie*[7] showing of secondary meaning under noted Eleventh Circuit precedent that the Court itself cited in its Order.

## 2. Erroneous Finding of Lack of Secondary Meaning as a Matter of Law

Given that Hudson's evidence constituted a *prima facie* demonstration of secondary meaning under Eleventh Circuit law, it was improper for the Court to continue its analysis at all, unless the Court was prepared to find that Hudson was successful in demonstrating secondary meaning as a matter of law. Instead, the Court's subsequent secondary meaning analysis was erroneously undertaken, because acquisition of secondary meaning is a factual issue. *McCain v. Designer Shoes Warehouse, LLC*, 864 So. 2d 784, 788 (5th Cir. 2003) (*citing Boston Beer Co. L.P. v. Slesar Bros. Brewing Co.*, 9 F.3d 175 (1st Cir.1993); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir.1992); *In re Loew's Theatres, Inc.*, 769 F.2d 764 (Fed. Cir.1985); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir.1983); Restat 3d of Unfair Competition, § 13. This principle is "black letter" law that has been widely recognized in hornbooks and other legal authority. "Whether or not a mark has acquired secondary meaning is a question of fact." 2 McCarthy § 15:29. Any resolution of

---

[7] The record reflects that the Court applied a *prima facie* standard as to Plaintiff but failed to do so as to Defendant. *See* Dkt. #142 at 21.

this issue contrary to Hudson's interests, as a matter of law, was improper and contrary to applicable legal precedent.

### 3. Erroneous Secondary Meaning Analysis

As noted herein, even reaching the secondary meaning analysis was an error. *See* Dkt. #142 at 16-20. Regrettably, the Court's subsequent analysis of this issue was concerning.

### a. Secondary Meaning Standards

The Court initially set out "four factors that are relevant to the secondary meaning inquiry" including: "(1) The length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's ... business; and (4) the extent to which the public actually identifies the name with the plaintiff's service." *See* Dkt. #142 at 17. Defendant takes note of the Court's citations, though Defendant also notes that other factors, including factors relevant in the instant case, would play a role. *GamerModz, Ltd. Liab. Co. v. Golubev*, No. 8:10-CV-1466-T-27TGW, 2011 U.S. Dist. LEXIS 116608, at *34 (M.D. Fla. Aug. 3, 2011) ("instances of customer confusion, and intentional copying of the mark . . . are relevant to a determination of secondary meaning") (*citing Caliber Automotive Liquidators, Inc. v. Premier Chrysler. Jeep, Dodge, LLC*, 605 F.3d 931, 939 n. 36 (11th Cir. 2010); *Brooks Shoe Mfg. Co., Inc. v.*

*Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983)). Even accepting the Court's noted law, the secondary meaning analysis was erroneous.

### b. Length and Manner of Use

First, as to "length and manner of use" Hudson's *nearly forty-three (43) years of continuous use*, including approximately *thirty-nine (39) years* of exclusive use in the United States is probative. *See generally* Dkt. #100-1.[8] This, alone, is a fact that would weigh heavily in Hudson's favor. There is also ample evidence of Hudson's successful consulting on more than one hundred forty (140) banks. *Id.*

Even adopting this Court's own analysis, that Hudson's use of the mark was "only" thirty-one (31) years, Hudson would have established rights in the Nubank name *more than eight years* before the Plaintiff purportedly entered the United States. Indeed, the Eleventh Circuit itself has concluded that only a "two-year period" was necessary where a party, like Hudson, "received extensive media attention." *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1084 (11th Cir. 2016). The Court's decision to ignore this time period, which even the Court itself admits would be a minimum of thirty-one (31) years of use, is a plain error.

---

[8] The Court, despite not directly addressing this issue in detail in the opinion, still concludes, indirectly, that Hudson had at least thirty-one (31) years of use of the term Nubank. *See* Dkt. #142 at 1 (noting "In 1979, Hudson began a consulting business . . . and Hudson continued his business up until 2010.") Defendant strongly disagrees with the Court's conclusion that Hudson was no longer engaging in his business after 2010, and the record is very well developed on this issue. *See e.g.* Dkt. #100-1.

### c. Nature and Extent of Advertising and Promotion

While the Court provides some minimal reference to *some* of Hudson's ample evidence of advertising and promotion, the Court improperly dismisses it as "too anecdotal." *See* Dkt. #142 at 17. This statement, in and of itself, is an error. Hudson's evidence was substantial. Hudson's evidence consisted of direct deposition testimony, including *third-party* deposition testimony of witnesses that were timely disclosed. Hudson also provided substantial documentary evidence, evidence of his substantial social media following, his website, self-authenticating press coverage from major media companies, academic citation from prominent universities, and more. The record is replete with this evidence. *See generally* Dkt. #100-1. Setting aside the erroneous "too anecdotal" language, the Court's Order outright *ignores* third-party deposition testimony[9] of one of Hudson's marketing vendors, one of Hudson's former employees, and one of Hudson's former customers. *See* Dkt. #100-1 at 3-6.

### d. Efforts Made by Markholder to Promote a Connection

On this issue, the Court states, among other things, that Hudson "failed to show that the articles caused the public to form a 'conscious connection' between him (Hudson) and 'Nubank.'" *See* Dkt. #142 at 18. The factual record is

---

[9] The omission of this testimony supporting Hudson was notable, given that the Court relied upon testimony of Plaintiff's witnesses that were not disclosed, should not have been relied upon, and would not testify at trial. Defendant addresses this issue below.

completely to the contrary. Simply refer to the mass media articles cited in the record:

- "Hudson . . . currently has more than 400 leads from would-be investors who have visited his Website, www.NuBank.com." *See* Dkt. #100-1 at ¶ 37.
- "Dan Hudson, the chief executive officer of NuBank." *Id.* at ¶ 38
- "Dan Hudson, the chief executive officer of Nubank." *Id.* at ¶ 39.
- "Dan Hudson, president and chief executive officer of NuBank." *Id.* at ¶ 41.
- Dan Hudson, president and chief executive officer of Nubank." *Id.* at ¶ 42.
- "Dan Hudson, president of the NuBank Group." *Id.* at ¶ 44.
- "Dan Hudson, CEO of Nubank." *Id.* at ¶ 45.
- "Nubank President Dan Hudson." *Id.* at ¶ 46.
- "Dan Hudson of Nubank." *Id.* at ¶ 47.
- "Dan Hudson of Nubank." *Id.* at ¶ 48.
- "Hudson, who heads NuBank." *Id.* at ¶ 49.
- "Dan Hudson, founder and CEO of Nubank." *Id.* at ¶ 50.
- "Nubank CEO, Dan Hudson" *Id.* at ¶ 51.
- "Dan Hudson, founder and CEO of Nubank." *Id.* at ¶ 52.
- "Dan Hudson, CEO of NuBank." *Id.* at ¶ 53.
- "Dan Hudson, CEO of NuBank." *Id.* at ¶ 54.
- "Dan Hudson, the chief executive of NuBank." *Id.* at ¶ 55.

The Court's conclusion that Hudson, consistently citing his business name in each and every one of these heavily circulated press outlets, over years of time, did not demonstrate "efforts" to form a "conscious connection" between Hudson and "Nubank" is curious. Moreover, Hudson's email addresses, social media, domain name and website all employed Nubank as his global brand. *See generally* Dkt. #100-1. Referring to the "efforts made" by Hudson to create a connection between himself and Nubank, there is little dispute that the evidence is compelling and properly presented to a jury.

*e. The Public Identifies Hudson with the Service.*

Again, the evidence is compelling on this issue. The authors of the various press articles sought out Hudson for his expertise.  Moreover, the evidence reflects that Mr. Hudson had a "reach" of 80,000 people on LinkedIn, with more than 18,000 connections and managed 10 groups that had numerous readers. *See* Dkt. #100-1 at ¶ 34-35.

Moreover, Hudson's expert witness, Peter Kent, concluded that "the fact that Mr. Hudson obtained prominent press coverage from large, important, public media companies is strong evidence that Mr. Hudson did run a successful, well-known business." *See* Dkt. #127-3 at 14 (*see also* Kent Report at 13, 15 ("Media lasts a long time on the World Wide Web. Such mentions, old and new, have the potential to bring potential business to NuBank.com and Mr. Hudson" and "Press coverage from the early 2000s and beyond continues to be available online.") Hudson's prior briefing explained, in detail, how courts have almost universally credited coverage in prominent mass media as credible evidence on similar issues. *See* Dkt. #131 at ECF 16-18. "Extensive media attention" is a highly relevant fact. *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1084 (11th Cir. 2016) (citing *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 544 (2d Cir. 1956) (a party's "'marked success . . . produced widespread and unusual recognition of its name and operation in the national press by the time [the other

party] entered the field" supported the existence of secondary meaning in a short period of time").

All four secondary meaning factors, that the Court itself recognized, favor Hudson. At the absolute minimum, the issue is one for a jury to decide. It was error for the Court to determine that Hudson could not show secondary meaning[10] as a matter of law.

### D. The Court Erroneously Relied Upon Undisclosed and Objectionable Witness Testimony, Contrary to Eleventh Circuit Law

The Court's Order was particularly erroneous by way of its heavy reliance on objectionable purported witness testimony. *See generally* Dkt. #142 at 19. Defendant expressly raised this issue during the briefing on the summary judgment motions. *See* Dkt. #127-1 at 17, ¶ 45.

### 1. Plaintiff Intentionally Hid, Then Failed to Disclose Certain Witnesses

Factual discovery in this matter ended on December 10, 2021. *See* Dkt. #36, Dkt. #42. Plaintiff's most recent witness disclosures, served on December 10, 2021, which was the last day of fact discovery, only identified as witnesses David Velez, Cristina Junquiera, George Daniel Hudson, Jr., Tony Yarborough, and Alessandro Prado. *See* Dkt. #127-2 at ECF 15-16; *see also* Dkt. #158-3. Defendant

---

[10] It bears repeating that the secondary meaning analysis should not have been reached at all, given that the parties had agreed that "Nubank is inherently distinctive." Hudson was substantially prejudiced when the Court ignored the Plaintiff's judicial admissions and subsequently partially resolved the matter in the Order.

expressly relied upon these disclosures, deposing four of the five witnesses

disclosed by Plaintiff, namely, Velez, Junquiera, Hudson and Prado.

Later the same day, at 6:15 PM ET, mere hours before the close of

discovery, Plaintiff produced documents that contained bates range

NUBANK0025283-27151. *See* Dkt. #158-4. Plaintiff did not produce any bates-

stamped document containing a bates number larger than 27151 during the

discovery period. Notwithstanding that fact, the five witnesses that Plaintiff relied

upon during the summary judgment briefing were as follows:

- Charles Lee Bradley – Declaration Dated November 9, 2021 – Dkt. #104-13 (NUBANK27129) (disclosed on December 10, 2021 at 6:15 PM)
- James Gordan Knight – Declaration Dated December 5, 2021 – Dkt. #104-12 (NUBANK27148) (disclosed on December 10, 2021 at 6:15 PM)
- Michael Wagner – Declaration Dated December 14, 2021 – Dkt. #104-11 (NUBANK27198) (disclosed on December 17, 2021)
- Thomas Kerestes – Declaration Dated December 13, 2021 – Dkt. #104-14 (NUBANK27195) (disclosed on December 17, 2021)
- Stacey Conti – Declaration Dated December 10, 2021 – Dkt. #103-8 (NUBANK28073) (disclosed on May 4, 2022)

In short, purported witnesses Wagner, Conti and Kerestes were *never*

disclosed during the applicable fact discovery period, in any respect. The Conti

declaration was untimely produced nearly *six months later*, on May 4, 2022. *See*

Dkt. #158-5. There is no argument, whatsoever, that these witnesses could possibly

be considered as timely disclosed.

Even assuming that the Bradley and Knight declarations were technically

produced "during discovery,"[11] the Plaintiff's most recent witness disclosures served the same day, did not include Bradley or Knight as potential witnesses. *See* Dkt. #127-2 at ECF 15-16.

This was despite the fact that Plaintiff's attorney, Erin Huntington, had been corresponding with these individuals for weeks prior to the amended disclosures. *See* Nubank 28228 and Nubank 28241 (designated as confidential).[12] Moreover, Plaintiff's suggestion that any of the witnesses "had already been clearly identified during the course of discovery" is wrong, because none of the witnesses had been disclosed on December 10, 2021, at 6:22 AM, when Plaintiff served its amended initial disclosures. *See* Dkt. #155 at 11-12, *see also* Dkt. #158-3.

Defendant pointedly objected to the improper presentation of these witnesses. *See* Dkt. #127-1 at ¶ 5, 16, 19, 20, 45, 58, 78 (*citing* Fed. Fed. R. Civ. P. 26. and *Sabal Trail Transmission, LLC v. Lasseter*, 823 F. App'x 914, 919 (11th Cir. 2020) (unpublished). Despite the disclosure of only five witnesses, Plaintiff, and the Court, substantially relied upon testimony of undisclosed fact witnesses

---

[11] While not immediately at issue, legal precedent broadly requires that a receiving party would have opportunity to substantively react to any disclosures. Notice mere hours before the deadline is unlikely to be considered sufficient.

[12] The documents are not confidential, but Plaintiff has designated them as such, so they will not be filed. For the convenience of the Court, undersigned counsel will represent that the documents are communications between Huntington and Bradley at least as early as November 18, 2021, and communications between Huntington and Knight as early as November 9, 2021.

Stacey Conti, Michael Wagner, James Gordan Knight, Charles Bradley, and Tom

Kerestes.[13] *See* Dkt. #103-3. This is error contrary to established law.

<u>2. Federal Rules, Eleventh Circuit Law Preclude Undisclosed Witnesses</u>

Rule 37(c)(1) provides that "If a party fails to provide information or

identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

that information or witness to supply evidence on a motion, at a hearing, or at a

trial, unless the failure was substantially justified or is harmless." *See* Fed. R. Civ.

P. 37(c)(1).

Moreover, the Eleventh Circuit routinely strikes witnesses under similar

circumstances. *See e.g. Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir.

2008) ("an appellate court should consider the explanation for the failure to

disclose the witness, the importance of the testimony, and the prejudice to the

opposing party [if the witness had been allowed to testify.]"); *R.M.R. by P.A.L.v

Muscogee Cty. Sch. Dist.*, 165 F.3d 812, 818 (11th Cir. 1999) ("It would have been

extremely prejudicial to [a party] to allow [another party's witness] to testify.");

*Bearint v. Dorell Juvenile*, 389 F.3d 1339, 1353 (11th Cir. 2004) (citations

omitted) ("only evidence used solely for impeachment is exempt from the Federal

Rules' disclosure requirement").

---

[13] The inclusion of these witnesses is clear error, but, even if it were not, cross examination of most of these witnesses would demonstrate clear biases against Hudson for a wide variety of reasons.

Finally, Plaintiff provides no explanation for failing to make the necessary timely witness disclosures. The Court also made no ruling upon, or even a reference to, the Defendant's objections. This likely constitutes reversible error.

### E. Numerous Reasonable Inferences Held Against Hudson

The Court itself recognized that, on summary judgment, the court will "consider the record and draw all reasonable inferences in the light most favorable to the nonmoving party." *See* Dkt. #142 at 8 (*citing Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018)). The Court's Order thereafter ignores large swaths of Hudson's substantial evidentiary showings, completely ignoring or minimizing large parts of the record.

By way of example, the Court makes *no* reference to *any* of Hudson's third-party witnesses, such as Sonia Blumberg, Tim Hyzdu or Patrick Adams, that were properly disclosed in discovery, subject to cross-examination during sworn depositions, and which were plainly relevant to the issues raised on summary judgment. *See* Dkt. #100-1 at 23-32, 35. The Court also ignores Hudson's years of use of "Nubank" in commerce and summarily dismisses Hudson's numerous other showings as "anecdotal." The Court's Order not only fails to fully "consider the record" but also fails to "draw all reasonable inferences in the light most favorable to the nonmoving party." This likely constitutes reversible error.

**F. The Court's Treatment of "Nubank" Compared to Nubank.com is Erroneous; Injunction Improperly Issued**

The Court held that "Hudson has no right to use 'Nubank' or any confusingly similar word or designation." *See* Dkt. #142 at 40. In the instant case, the Court's Order purportedly enjoins Hudson from using the mark "Nubank" while simultaneously allowing the question of the ownership of the nubank.com domain name to be resolved by a jury. *See* Dkt. #142 at 31 ("a jury must decide whether Hudson used the nubank.com domain for the bona fide offering of goods and services.") The relevant law does not allow for such a conclusion.

1. Top Level Domain Indicator has No Trademark Significance

The Federal Circuit has explained that the term ".com" is a top-level domain indicator (TLD) without any trademark significance. *In re Oppedahl & Larson Llp*, 373 F.3d 1171, 1173 (Fed. Cir. 2004) (citations omitted).

The addition of a TLD such as ".com" or ".org" to an otherwise unregistrable mark will typically not add any source-identifying significance, similar to the analysis of "Corp." and "Inc." in Goodyear's Rubber Manufacturing Co., 128 U.S. at 602. *In re Oppedahl & Larson Llp*, 373 F.3d 1171, 1177 (Fed. Cir. 2004) (*citing Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co.*, 128 U.S. 598, 602, 9 S. Ct. 166, 167 (1888)). The *Oppedahl & Larson Llp* Court provided an example quite analogous to the situation in the instant case:

In context, appellant's hypothetical would state, "I bought this book from Amazon," and "I bought this book from Amazon.com." In that setting, the addition of ".com" adds no source-identifying significance, *which is likely to be the case in all but the most exceptional case*.

*In re Oppedahl & Larson Llp*, 373 F.3d 1171, 1176 (Fed. Cir. 2004) (emphasis added). The Court's Order, suggesting that Hudson is enjoined from using "Nubank" as a matter of law, but treating the ownership of the domain name "nubank.com" as a separate factual issue to be determined by a jury, is effectively a legal impossibility. If Hudson prevails at trial, the Court's Order already enjoins him from using the domain name, in any respect, and any trial would be legally meaningless.

The only viable way to solve this error, based on the current Order, would be for the Court to proclaim that the addition of .com to "nubank" made "nubank.com" a mark of "source-identifying significance." The Court did nothing of the sort in the Order, and, as the very clear law demonstrates, such a ruling would only be appropriate in "all but the most exceptional case." *In re Oppedahl & Larson Llp*, 373 F.3d at 1176. Treating "Nubank" and "nubank.com" as separate marks was an error.

## G. Related Orders

When the Court reconsiders its Order, Defendant notes that there may be other related Orders that should be revisited by the Court. Notably, the Court's

Prior Order regarding one of Hudson's Experts, previously denied as moot, would require the Court's attention. *See* Dkt. #165.

## CONCLUSION

For the reasons stated herein, the Court should reconsider its prior Order and issue a revised Order that addresses the issues raised herein.

\* \* \*

Respectfully submitted,

/s/ Eric Menhart
Eric Menhart, Esq.*
Lexero Law
512 C St NE
Washington, DC 20002
Phone: 855-453-9376
Fax: 855-453-9376
* *Admitted Pro Hac Vice*

## CERTIFICATION OF FONT SIZE

Pursuant to Local Rule 7.1(D), I certify that the font employed in this document is 14-point Times New Roman.

/s/ Eric Menhart
Eric Menhart, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed via the Court's ECF system and all parties of record were served via that system.

/s/ Eric Menhart
Eric Menhart, Esq.